HONORABLE MARSHA J. PECHMAN

1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

INTERVAL LICENSING LLC,

11

Plaintiff,

12

v.

13

AOL, INC., et al.,

14

Defendants.

CASE NO.  2:10-cv-01385-MJP

DEFENDANTS' OPENING BRIEF IN
SUPPORT OF THEIR PROPOSED
CLAIM CONSTRUCTIONS:
'652 AND '314 PATENTS

**NOTE ON MOTION CALENDAR:
November 9, 2012 at 10:00 a.m.**

15

INTERVAL LICENSING LLC,

16

Plaintiff,

17

18

v.

19

APPLE, INC.,

Defendant.

20

CASE NO. C11-708-MJP

LEAD CASE NO. C10-1385-MJP

21

INTERVAL LICENSING LLC,

22

Plaintiff,

23

v.

24

GOOGLE INC.,

25

Defendant.

CASE NO. C11-711-MJP

LEAD CASE NO. C10-1385-MJP

26
27

DEFENDANTS' OPENING BRIEF IN SUPPORTDEFENDANTS'
OPENING BRIEF IN SUPPORT OF THEIR PROPOSED CLAIM
CONSTRUCTIONS:
'652 AND '314 PATENTS - 2:10-cv-01385-MJP

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
(206) 626-6000

| | |
|---|---|
| INTERVAL LICENSING LLC,<br><br>                Plaintiff,<br><br>      v.<br><br>YAHOO! INC.,<br><br>             Defendant. | CASE NO. C11-716-MJP<br><br>LEAD CASE NO. C10-1385-MJP |

DEFENDANTS' OPENING BRIEF IN SUPPORTDEFENDANTS'
OPENING BRIEF IN SUPPORT OF THEIR PROPOSED CLAIM
CONSTRUCTIONS:
'652 AND '314 PATENTS - 2:10-cv-01385-MJP

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
(206) 626-6000

# TABLE OF CONTENTS

**Page**

I.      PATENTS-IN-SUIT ............................................................................. 1

II.     INDEFINITENESS.............................................................................. 3

A.      The Claim Term "In an Unobtrusive Manner" is Indefinite Because It is Subjective and Depends on the Environment in Which an Image is Displayed.......... 6

B.      The Claim Term "Does Not Distract a User" is Indefinite Because It is a Subjective Inquiry and Depends on the Individual User and the Environment of Use ................................................................................................ 8

III.    LEGAL PRINCIPLES APPLICABLE TO CLAIM CONSTRUCTION................... 11

A.      General Principles ......................................................................... 11

B.      Special Rules For "Means-Plus-Function" Terms ...................................... 11

IV.     CLAIM CONSTRUCTION ARGUMENT ................................................. 12

1.    "selectively displaying on the display device . . . an image or images generated from the set of content data" ['652 Claims 4-8, 11; '314 Claims 10, 13] ........... 12

2.    "images generated from a set of content data" [All Claims] ............................... 14

3.    "in an unobtrusive manner that does not distract a user of the apparatus from a primary interaction with the apparatus" ['652 Claims 4-8, 11] "in an unobtrusive manner that does not distract a user of the display device or an apparatus associated with the display device from a primary interaction with the display device or apparatus" ['314 Claims 1, 3, 7, 10, 13] ............................................... 16

4.    "primary interaction" ['652 Claims 4, 34, 35; '314 Claims 1, 3, 7, 10, 13] ......... 20

5.    "means for selectively displaying on the display device, in an unobtrusive manner that does not distract a user of the apparatus from a primary interaction with the apparatus, an image or images generated from the set of content data" ['652 Claims 4-8, 11]................................................................................. 21

6.    "each content provider provides its content data to [a/the] content display system independently of each other content provider" ['314 All Claims] ...................... 23

7.    "user interface installation instructions for enabling provision of a user interface that allows a person to request the set of content data from the specified information source" ['652 Claims 15-18]........................................................... 24

8.    "during operation of an attention manager" ['652 Claims 15-18]....................... 26

9.    "means for acquiring a set of content data from a content providing system" ['652 Claim 4] ................................................................................... 29

DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR PROPOSED
CLAIM CONSTRUCTIONS:
'652 AND '314 PATENTS - 2:10-cv-01385-MJP

**STOKES LAWRENCE, P.S.**
800 FIFTH AVENUE, SUITE 4000
SEATTLE, WASHINGTON 98104-3179
(206) 626-6000

\ 1548610.doc                    -i-

10. "content provider" ['314 All Claims] .................................................................. 31

11. "content data scheduling instructions for providing temporal constraints on the display of the image or images generated from the set of content data" ['652 Claims 15, 17, 18] .................................................................................................. 32

12. "content data update instructions for enabling acquisition of an updated set of content data from an information source that corresponds to a previously acquired set of content data" ['652 Claim 18] .................................................................... 35

13. "content display system scheduling instructions for scheduling the display of the image or images on the display device" ['652 Claim 18] .................................... 36

14. "instructions" ['652 Claim 15, 16, 17, 18; '314 All Claims] .............................. 37

15. "means for displaying one or more control options with the display device while the means for selectively displaying is operating" ['652 Claim 4] ...................... 38

DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR PROPOSED
CLAIM CONSTRUCTIONS:
'652 AND '314 PATENTS - 2:10-cv-01385-MJP

**STOKES LAWRENCE, P.S.**
800 FIFTH AVENUE, SUITE 4000
SEATTLE, WASHINGTON 98104-3179
(206) 626-6000

\ 1548610.doc                                                    -ii-

1

2

# TABLE OF AUTHORITIES

3

## CASES

4
*Applied Med. Res. Corp. v. U.S. Surgical Corp.*,
    448 F.3d 1324 (Fed. Cir. 2006)..................................................................31

5

6
*Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*,
    521 F.3d 1328 (Fed. Cir. 2008).................................................12, 22, 23, 29

7
*Atmel Corp. v. Info. Storage Devices, Inc.*,
    997 F. Supp. 1210 (N.D. Cal. 1998) .............................................................39

8

9
*Becton, Dickinson & Co. v. C.R. Bard, Inc.*,
    922 F.2d 792 (Fed. Cir. 1990).......................................................................16

10

11
*Becton, Dickinson & Co. v. Tyco Healthcare Grp. LP*,
    616 F.3d 1249 (Fed. Cir. 2010)..................................................................2, 16

12
*Bicon, Inc. v. Straumann Co.*,
    441 F.3d 945 (Fed. Cir. 2006).....................................................................2, 34

13

14
*C.R. Bard, Inc. v. U.S. Surgical Corp.*,
    388 F.3d 858 (Fed. Cir. 2004)...................................................................32, 35

15

16
*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*,
    296 F.3d 1106 (Fed. Cir. 2002) ................................................................ 11-12

17
*Crane Co. v. Sandenvendo Am., Inc.*,
    No. 2:07-cv-42-CE, 2009 WL 1586704 (E.D. Tex. June 5, 2009)...........................5

18

19
*CVI/Beta Ventures, Inc. v. Tura LP*,
    112 F.3d 1146 (Fed. Cir. 1997)...............................................................19, 27

20

21
*Datamize LLC v. Plumtree Software, Inc.*,
    417 F.3d 1342 (Fed. Cir. 2005)............................................................... passim

22
*Decisioning.com, Inc. v. Federated Dep't Stores, Inc.*,
    527 F.3d 1300 (Fed. Cir. 2008)......................................................................15

23

24
*Digital Control Inc. v. Charles Mach. Works*,
    No. C03-103P, 2003 WL 25782745 (W.D. Wash. Dec. 11, 2003) ........................22

25

26
*Energizer Holdings, Inc. v. Int'l Trade Comm'n*,
    435 F.3d 1366 (Fed. Cir. 2006).......................................................................4

27
*Geneva Pharm., Inc. v GlaxoSmithKline PLC*,
    349 F.3d 1373 (Fed. Cir. 2003).......................................................................5

DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR PROPOSED
CLAIM CONSTRUCTIONS:
'652 AND '314 PATENTS - 2:10-cv-01385-MJP

**STOKES LAWRENCE, P.S.**
800 FIFTH AVENUE, SUITE 4000
SEATTLE, WASHINGTON 98104-3179
(206) 626-6000

*Halliburton Energy Servs., Inc. v. M-I LLC,*
    514 F.3d 1244 (Fed. Cir. 2008)............................................................ passim

*Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.,*
    687 F.3d 1300 (Fed. Cir. 2012)...................................................................26

*Hockerson-Halberstadt, Inc. v. Avia Grp. Int'l, Inc.,*
    222 F.3d 951 (Fed. Cir. 2000).....................................................................19

*JVW Enter., Inc. v. Interact Accessories, Inc.,*
    424 F.3d 1324 (Fed. Cir. 2005)............................................................. 38-39

*Markman v. Westview Instruments, Inc.,*
    517 U.S. 370 (1996)......................................................................5, 10, 16

*Medtronic, Inc. v. Advanced Cardiovascular Sys. Inc.,*
    248 F.3d 1303 (Fed. Cir. 2001).....................................................................39

*Merrill v. Yeomans,*
    94 U.S. 568 (1877)........................................................................................16

*Micro Chem., Inc. v. Great Plains Chem. Co.,*
    194 F.3d 1250 (Fed. Cir. 1999).....................................................................30

*Microsoft Corp. v. Multi-Tech Sys., Inc.,*
    357 F.3d 1340 (Fed. Cir. 2004).....................................................................11

*N. Telecom, Inc. v. Datapoint Corp.,*
    908 F.2d 931 (Fed. Cir. 1990), *cert denied*, 498 U.S. 920 (1990).........................18

*Netcraft Corp. v. eBay, Inc.,*
    549 F.3d 1394 (Fed. Cir. 2008).....................................................................33

*Nystrom v. Trex Co.,*
    424 F.3d 1136 (Fed. Cir. 2005).....................................................................15

*Osram GMBH v. Int'l Trade Comm'n,*
    505 F.3d 1351 (Fed. Cir. 2007).....................................................................15

*Phillips v. AWH Corp.,*
    415 F.3d 1303 (Fed. Cir. 2005) (en banc)................................................. passim

*Praxair, Inc. v. ATMI, Inc.,*
    543 F.3d 1306 (Fed. Cir. 2008).......................................................................4

*Primos, Inc. v. Hunter's Specialties, Inc.,*
    451 F.3d 841 (Fed. Cir. 2006).....................................................................34

DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR PROPOSED
CLAIM CONSTRUCTIONS:
'652 AND '314 PATENTS - 2:10-cv-01385-MJP

**STOKES LAWRENCE, P.S.**
800 FIFTH AVENUE, SUITE 4000
SEATTLE, WASHINGTON 98104-3179
(206) 626-6000

\ 1548610.doc                                    -iv-

*Renishaw PLC v. Marposs Societa' per Azioni*,
    158 F.3d 1243, 1250 (Fed. Cir. 1998)............................................................11, 14

*Rheox, Inc. v. Entact, Inc.*,
    276 F.3d 1319 (Fed. Cir. 2002)..........................................................................11

*Rhine v. Casio, Inc.*,
    183 F.3d 1342 (Fed. Cir. 1999)..........................................................................16

*Romala Stone, Inc. v. Home Depot U.S.A., Inc.*,
    No. 1:04-CV-2307-RWS, 2007 WL 2904110 (N.D. Ga. Oct. 1, 2007) ...................5

*Schwing GmbH v. Putzmeister Aktiengesellschaft*,
    305 F.3d 1318 (Fed. Cir. 2002)..........................................................................28

*Semmler v. Am. Honda Motor Co.*,
    990 F. Supp. 967 (S.D. Ohio 1997) .....................................................................5

*Southwall Techs., Inc. v. Cardinal IG Co.*,
    54 F.3d 1570 (Fed. Cir. 1995)...........................................................................24

*STX, Inc. v. Brine, Inc.*,
    37 F. Supp. 2d 740 (D. Md. 1999) ................................................................5, 6, 7

*United Carbon Co. v. Binney & Smith Co.*,
    317 U.S. 228 (1942)............................................................................................6

*Vitronics Corp. v. Conceptronic Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996)...............................................................17, 18, 21

*WMS Gaming Inc. v. Int'l Game Tech.*,
    184 F.3d 1339 (Fed. Cir. 1999)...........................................................12, 22, 39

**STATUTES AND RULES**

35 U.S.C. § 112................................................................................3, 4, 11, 21

DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR PROPOSED
CLAIM CONSTRUCTIONS:
'652 AND '314 PATENTS - 2:10-cv-01385-MJP

STOKES LAWRENCE, P.S.
800 FIFTH AVENUE, SUITE 4000
SEATTLE, WASHINGTON 98104-3179
(206) 626-6000

\ 1548610.doc                                                    -v-

1

2      In accordance with the Court's Scheduling Order Docket No. 271, and pursuant to Patent

3  Local Rule 134, AOL Inc. ("AOL"), Apple, Inc. ("Apple"), Google Inc. ("Google"), and Yahoo!

4  Inc. ("Yahoo!") (collectively, the "Defendants")  hereby respectfully submit this Opening Brief

5  on Claim Construction regarding the disputed claim terms in U.S. Patent No. 6,034,652 ("the

6  '652 Patent") and U.S. Patent No. 6,788,314 ("the '314 Patent") (collectively "the Patents").

7  The Patents relate to a system that displays images on a computer screen that are not part of a

8  user's "primary interaction" with the computer.

9      This brief is divided into two sections.  The first section addresses the indefiniteness of

10  two claim limitations in the Patents about how the images are to be displayed on a computer

11  display screen.  The claims recite: (1) the images must be displayed in an "unobtrusive manner"

12  and (2) the display of images must not "distract a user" from the user's "primary interaction"

13  with the apparatus.  As Interval's own expert confirmed in his deposition, whether an image on a

14  computer screen is displayed in an "unobtrusive manner" and whether it "distracts" the user from

15  a primary interaction are nebulous concepts that depend on "an infinite number of" factors,

16  including the environmental condition of use and the individual user.  Because these are

17  nebulous concepts that depend on external factors and there are no objective criteria for

18  determining if they are met, it is impossible for a potential competitor to determine the metes and

19  bounds of the claims.  Thus, these claim limitations are indefinite under controlling precedent.

20  The second section of the claim construction brief presents the Defendants' constructions  for the

21  15 disputed terms identified in the Joint Claim Construction and Prehearing Statement

22  (hereinafter "JPHS") submitted by the parties.  (Dkt. No. 277)[1]

23  **I.   PATENTS-IN-SUIT**

24      The Patents refer to a computer user sitting in front of a computer screen engaged in a

25  "primary interaction" with the computer.  (*See, e.g.*, '652, 2:3-5)  The Patents define "primary

26

27  _____
   [1] Parties will file a Praecipe to the JPHS that will include an amended Exhibit 1 and Exhibit C1.  Hereinafter, all
   cites to Exhibit 1 and Exhibit C1 of the JPHS will refer to the Praecipe to be filed.

   DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR PROPOSED
   CLAIM CONSTRUCTIONS:                                              **STOKES LAWRENCE, P.S.**
   '652 AND '314 PATENTS - 2:10-cv-01385-MJP                         1420 FIFTH AVENUE, SUITE 3000
                                                                     SEATTLE, WASHINGTON 98101
                                                                     (206) 626-6000

1    interaction" broadly.  (*See* '652, 8:14-36)  A primary interaction could essentially be anything,

2    such as working on a word processing document, responding to an email, searching the Internet,

3    or the normal operation of the operating system.  An example is illustrated below.



10   According to the Patents, if a user is working on a word processing document as his

11   primary interaction, images displayed according to the invention must be displayed in an

12   "unobtrusive manner" that "does not distract [the] user" from working on the document.  (*See,*

13   *e.g.*, '652, 2:11-18, 6:23-51)  Nearly all of the asserted claims require two separate limitations:

14   (1) that the images be displayed in an "unobtrusive manner" and (2) that the display of images

15   must not "distract a user" from the user's "primary interaction" with the apparatus.  These

16   limitations appear in Disputed Term #3 (and Disputed Term #5) as:

17
       "in *an unobtrusive manner* that *does not distract* a user of the apparatus from a
18     primary interaction with the apparatus" ('652, Claims 4-8, 11, 34, 35 (emphasis
       added))

19
       "in an *unobtrusive manner* that *does not distract* a user of the display device or an
20     apparatus associated with the display device from a primary interaction with the
       display device or apparatus" ('314, All Claims (emphasis added))

21
22   Each limitation is a separate requirement of the claimed invention with a separate meaning and

     must be treated as such.  *See, e.g.*, *Becton, Dickinson & Co. v. Tyco Healthcare Grp. LP*, 616

23   F.3d 1249, 1257 (Fed. Cir. 2010) ("Claims must be 'interpreted with an eye toward giving effect

24   to all terms in the claim.'" (quoting *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir.

25   2006))).  Whether treated separately or together, these claim limitations fail to define a definite

26   invention at least because whether an image is displayed in an "unobtrusive manner" or "does

27

DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR PROPOSED
CLAIM CONSTRUCTIONS:
'652 AND '314 PATENTS - 2:10-cv-01385-MJP

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
(206) 626-6000

-2-

1    not distract a user" depends on the subjective opinion of each individual user and on the

2    surrounding environment in which the image is displayed.

3         To illustrate this problem, the figure below shows a user working on a word processing

4    document with a background (i.e. wallpaper) on the screen containing a message about the

5    weather in white letters, at least partially obscured by the word processing document.

6

7

8

9                                                          Displayed image

10

11

12

13

14   According to the patent claims, one skilled in the art must determine:  (1) if the weather message

15   (an "image" that is part of the wallpaper) is displayed in "an unobtrusive manner" and (2) if that

16   image "distract[s] a user" from working on the word processing document.  The specification

17   provides no guidance or any objective criteria that would allow one of ordinary skill in the art to

18   determine whether a particular image is displayed in an "unobtrusive manner" or whether it

19   "does not distract a user."  Moreover, these determinations will vary greatly depending on the

20   individual user as well as the environment in which the user is viewing the images.  Different

21   users and different environmental conditions will result in different outcomes.  Thus, the Patents

22   do not answer two basic questions facing one of ordinary skill in the art in trying to determine

23   the metes and bounds of the claims—what constitutes displaying an image in an "unobtrusive

24   manner" and what "does not distract a user"?  The terms are insolubly ambiguous, and the claims

25   are therefore invalid as indefinite under 35 U.S.C. § 112 ¶ 2.

26   **II.   INDEFINITENESS**

27         Here, this Court should hold that Disputed Terms #3 and #5 are insolubly ambiguous and

DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR PROPOSED
CLAIM CONSTRUCTIONS:
'652 AND '314 PATENTS - 2:10-cv-01385-MJP

therefore indefinite, which renders the claims of the '314 Patent and claims 4-8, 11, 34, and 35 of the '652 Patent invalid. Under 35 U.S.C. § 112 ¶ 2, the patent claims must be "sufficiently definite to inform the public of the bounds of the protected invention." *Halliburton Energy Servs., Inc. v. M-I LLC,* 514 F.3d 1244, 1249 (Fed. Cir. 2008). "Indefiniteness is a matter of claim construction, and the same principles that generally govern claim construction are applicable to determining whether allegedly indefinite claim language is subject to construction." *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1319 (Fed. Cir. 2008) (citing *Datamize LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1348 (Fed. Cir. 2005)); *see also Energizer Holdings, Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366, 1368 (Fed. Cir. 2006) ("An analysis of claim indefiniteness under § 112 ¶ 2 is inextricably intertwined with claim construction." (citation omitted)). Claim language is indefinite, and the claim is therefore invalid, if one skilled in the art cannot "determine the bounds of the claims, i.e., the claims [are] insolubly ambiguous." *Halliburton*, 514 F.3d at 1249. Moreover, "[e]ven if a claim term's definition can be reduced to words, the claim is still indefinite if a person of ordinary skill in the art cannot translate the definition into meaningfully precise claim scope." *Id.* at 1251. "Otherwise, competitors cannot avoid infringement, defeating the public notice function of patent claims." *Id.* at 1249.

The Federal Circuit, in its *Halliburton* and *Datamize* lines of cases, established two related, but independent, grounds under which claim limitations may be held indefinite. First, a term is indefinite if one skilled in the art would not know from one use to the next whether the accused product was within the scope of the claims because outside factors affect whether the limitation is met. *See Halliburton*, 514 F.3d at 1254-55. In *Halliburton*, the Federal Circuit held that the claim limitation "fragile gel" was indefinite because it was a term of degree and a skilled artisan would have no way to determine what fell within the claim limitation in light of the many factors that could affect that determination. *Id.* at 1253-56. The court explained that the patentee failed to "identify the degree of the fragility of its invention," and thus did not properly identify the boundaries of the claim language. *Id.* at 1253. The court also held that the term was indefinite because a skilled artisan "would not know from one well to the next whether a certain

DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR PROPOSED
CLAIM CONSTRUCTIONS:
'652 AND '314 PATENTS - 2:10-cv-01385-MJP

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
(206) 626-6000

-4-

drilling fluid was within the scope of the claims because a wide variety of factors could affect adequacy." *Id.* at 1254-55.  To construe a claim term such that a product "might infringe or not depending on its usage in changing circumstances" is the "epitome of indefiniteness." *Geneva Pharm., Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373, 1384 (Fed. Cir. 2003); *see also Halliburton*, 514 F.3d at 1254 (relying on *Geneva Pharm.* to find claim term "fragile gel" indefinite).

Second, claim language that "depend[s] solely on the unrestrained, subjective opinion of a particular individual purportedly practicing the invention" is indefinite. *Datamize*, 417 F.3d at 1350.  When a subjective claim term is used, "[s]ome objective standard *must* be provided in order to allow the public to determine the scope of the claimed invention." *Id.* (emphasis added). In *Datamize*, the Federal Circuit ruled that a claim directed to an electronic kiosk system with an "aesthetically pleasing" user interface was invalid as indefinite. *Id.* at 1356.  The court held that neither the claim language nor the specification provided an "*objective standard* … in order to allow the public to determine the scope" of the term "aesthetically pleasing." *Id.* at 1350 (emphasis added).  Thus, a claim term cannot be based on a subjective construction that "would depend on the unpredictable vagaries of any one person's opinion." *Id.*

Courts have found similar terms indefinite where the terms were based on the subjective view of an individual. *See, e.g.*, *STX, Inc. v. Brine, Inc.*, 37 F. Supp. 2d 740, 746 (D. Md. 1999) ("improved handling and playing characteristics"); *Romala Stone, Inc. v. Home Depot U.S.A., Inc.*, No. 1:04-cv-2307-RWS, 2007 WL 2904110, at *5-6 (N.D. Ga. Oct. 1, 2007) ("price affordable to the average consumer"); *Semmler v. Am. Honda Motor Co.*, 990 F. Supp. 967, 974-75 (S.D. Ohio 1997) ("considerable fuel savings"); *Crane Co. v. Sandenvendo Am., Inc.*, No. 2:07-cv-42-CE, 2009 WL 1586704, at *13 (E.D. Tex. June 5, 2009) ("rapidly").  For example in *STX*, the patent-in-suit claimed a lacrosse stick with "improved handling and playing characteristics."  The district court ruled that the term was subjective because if one skilled in the art attempted to determine the scope of the invention, he would "find himself imprisoned in a 'zone of uncertainty.'" *Id.* at 755; *see also Markman v. Westview Instruments, Inc.*, 517 U.S.

DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR PROPOSED
CLAIM CONSTRUCTIONS:
'652 AND '314 PATENTS - 2:10-cv-01385-MJP

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
(206) 626-6000

-5-

370, 390 (1996) ("zone of uncertainty . . . would discourage invention only a little less than unequivocal foreclosure of the field") (citing *United Carbon Co. v. Binney & Smith Co.*, 317 U.S. 228, 236 (1942)).  The *STX* court commented that the notion that a third party user (a lacrosse player) would have to use a product to determine whether it embodied the subjective claim limitation was not acceptable and was "repugnant to long-standing principles of patent jurisprudence."  *STX,* 37 F. Supp. 2d at 755.

A.      **The Claim Term "In an Unobtrusive Manner" is Indefinite Because It is Subjective and Depends on the Environment in Which an Image is Displayed**

Here, the Patents' claim language requiring that images be displayed "in an unobtrusive manner" suffers from both of the flaws of the disputed terms in *Halliburton* and *Datamize.*  The same image may or may not be considered unobtrusive depending on a variety of factors (like the "fragile gel" in *Halliburton*), and the term is entirely subjective (like "aesthetically pleasing" in *Datamize*).  Thus, the term is insolubly ambiguous and therefore indefinite.

First, similar to "fragile gel" in *Halliburton*, the Patents' claim language "in an unobtrusive manner" is indefinite because the intrinsic record provides no basis for a skilled artisan to weigh the "infinite number of contexts" and factors to determine whether a displayed image is displayed in an "unobtrusive manner."  (*See* Decl. of Shannon Jost ("Jost Decl.") Ex. A, (Tr. of the Test. of William H. Mangione-Smith, Ph.D. ("Mangione-Smith Dep.")) at 115:20-116:5)  Interval's expert testified that an unobtrusive display is one that does not "intrude upon [a user] to a significant degree" or that "is not obtrusive to the person to which it is being displayed."  (*See* Jost Decl. Ex. A (Mangione-Smith Dep.) at 112:8-14, 111:6-12)  Interval's expert further testified that his use of "does not intrude to a significant degree" meant to "a degree that the user would find it to be obtrusive."  (*See* Jost Decl. Ex. A (Mangione-Smith Dep.) at 124:6-11)  Such circular explanations confirm the term is meaningless.

Further, the Patents provide no objective guidance to delineate between "unobtrusive" and obtrusive.  As Interval's own expert conceded, such a determination would be based on an "infinite number of contexts," many of which are outside the control of an accused infringer, that

DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR PROPOSED
CLAIM CONSTRUCTIONS:
'652 AND '314 PATENTS - 2:10-cv-01385-MJP

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
(206) 626-6000

1    will affect whether the display of an image is "unobtrusive." (*See* Jost Decl. Ex. A (Mangione-

2    Smith Dep.) at 115:20-116:5)

3       Q:  Can you explain the context that would help you determine whether an
        image displayed on a display screen would be obtrusively displayed?

4

5       A:  No. I mean, there's *an infinite number of contexts*. It depends on the
        context where -- you know, the context of the -- in the context of the '652
6       specifically, the context of the rest of the claim specification and the intrinsic
        evidence. In the more general case we're talking about of images and sort of a
7       general term of "unobtrusive," *it would depend on what the application was
        the user was using, what the image actually was*.

8       Q:  Any other factors?

9       A:  I'm sure there are. Likely, you know, *what the quality of the display is, its
        brightness, glare, possible animations. There's a wide range of factors that –*
10      *all of which could play into whether something is obtrusive or unobtrusive.*

11   (*Id.* at 115:20-116:11 (emphasis added))  The nature of the image, including its color, size and

12   information displayed, could also affect whether an image is displayed in an "unobtrusive

13   manner." (*See id.* at 113:15-23,115:3-10, 121:18-24)  In addition, the surrounding environment

14   of the room in which the image is viewed would be another factor.  For example, Interval's

15   expert testified, "the orientation of the screen caus[ing] glare problems with ambient light from a

16   natural source or incident light from man-made source" would affect whether the image is

17   displayed in an "unobtrusive manner." (*Id.* at 136:13-137:1)  Interval's expert further

18   acknowledged that "what [] application the user was using" and generally "what the person was

19   doing" would be yet more factors. (*Id.* at 115:20-116:5,156:17-19)

20      Second, like "aesthetically pleasing" in *Datamize* and the term "improved handling and

21   playing characteristics" in *STX*, both Interval and Defendants' experts agree that whether an

22   image is displayed in an "unobtrusive manner" is entirely dependent on the subjective opinion of

23   an individual user. (*See* Decl. of Dr. Bruce M. Maggs ("Maggs Decl.") ¶ 26; *see, e.g.*, Jost Decl.

24   Ex. A (Mangione-Smith Dep.) at 121:18-24, 157:5-15)  Interval's expert confirmed that the term

25   "unobtrusive manner" depends on the subjective and "personal factors related to [a] person."

26   (Jost Decl. Ex. A (Mangione-Smith Dep.) at 157:5-15)  For example, one user may find a

27   displayed image "unobtrusive" depending on whether "the colors [of the image and background

DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR PROPOSED
CLAIM CONSTRUCTIONS:
'652 AND '314 PATENTS - 2:10-cv-01385-MJP

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
(206) 626-6000

are] harmonious" or whether the "combination of the colors [are] pleasing and nonjarring." (Jost Decl. Ex A (Mangione-Smith Dep.) at 114:5-19)  Yet, another user may find the same color combination "jarring" and obtrusive. (*Id.*)  Interval's expert's admission that two users presented with the identical displayed image may reach different conclusions about whether the image was displayed in an "unobtrusive manner" confirms the inherent subjectivity of this term. (*Id.* at 121:9-17)  Moreover, the specification contains no "objective anchor" to allow a skilled artisan to determine whether an image is displayed in an "unobtrusive manner." (*See* Maggs Decl. ¶ 26); *see Datamize*, 417 F.3d at 1350.

A skilled artisan would have no way to know whether a displayed image would be "unobtrusive" to a user without asking each individual user for her subjective opinion because whether an image is displayed in an "unobtrusive manner" depends on the circumstances in which an image is displayed.  (*See* Jost Decl. Ex. A (Mangione-Smith Dep.) at 115:20-116:5) "[T]he purpose of the definiteness requirement is to ensure that the claims delineate the scope of the invention using language that adequately notifies the public of the patentee's right to exclude." *Datamize,* 417 F.3d at 1347.  In this case, a skilled artisan is left in a "zone of uncertainty" when attempting to determine the metes and bounds of an image displayed in an "unobtrusive manner."  The public cannot determine the scope of the claims, thus, all claims of the '314 Patent and claims 4-8, 11, 34, and 35 of the '652 Patent, which contain Disputed Terms #3 and #5, are invalid as indefinite.

**B.     The Claim Term "Does Not Distract a User" is Indefinite Because It is a Subjective Inquiry and Depends on the Individual User and the Environment of Use**

The claim requirement that a displayed image "does not distract" a user is also indefinite because whether something distracts a user (from her primary interaction) depends not only on the characteristics and preferences of the particular user, but also on the circumstances under which any single user interacts with the display.  The Patents provide no objective standard to determine whether a displayed image will distract a user because distraction depends on the "subjective opinion of that user, what the user is doing at the time, and how easily the user may

DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR PROPOSED
CLAIM CONSTRUCTIONS:
'652 AND '314 PATENTS - 2:10-cv-01385-MJP

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
(206) 626-6000

-8-

1    be distracted."  (*See* Maggs Decl. ¶ 26)

2         Similar to *Halliburton*, in which the question of whether a gel was "fragile" depended on

3    factors that would vary from oil well to oil well, one skilled in the art would not be able to

4    determine whether a displayed image "distract[s] a user" because of the myriad environmental

5    factors that will affect the determination.  *See Halliburton*, 514 F.3d at 1255-56.  One would

6    have to evaluate every circumstance in which an image can be displayed and make a separate

7    determination for each individual user about whether the image would distract the user.  Even if

8    the Patents provided guidance for making such a determination, which they do not, such

9    determinations would necessarily result in different outcomes for each set of circumstances.

10   Moreover, it is impossible to formulate an objective test for determining distraction because, as

11   Interval's own expert testified, "two different users may have different propensity to distraction."

12   (Jost Decl. Ex. A (Mangione-Smith Dep.) at 137:24-138:7)  Interval's expert confirmed that

13   many factors, outside the control of an accused infringer, affect whether a particular displayed

14   image would distract a user from a primary interaction.

15        Q: (By Mr. Heit)   What additional information do you need?

16        A:   I think as I tried to suggest -- I'm sorry if it wasn't clear -- at a minimum
          I would want to consider the other factors that we discussed:  *What it is*
17        *exactly that's presented, the exact context in which information is displayed,*
          *the environmental factors, the key technological capabilities for composing*
18        *an image and ultimately presenting it on the screen, and there may be other*
          *factors* which I either mentioned earlier and neglect to recall at the moment,
19        or neglected to mention at all.

20   (Jost Decl. Ex. A (Mangione-Smith Dep.) at 138:23-139:8 (emphasis added))  For example,

21   Interval's expert explained that numerous factors may affect whether a displayed image will

22   distract a user, including a display's ability to present different colors, the resolution ("pixel

23   density") of the screen, and the "various graphics elements."  (*Id.* at 135:18-136:9)

24        Additionally, a user's own characteristics, such as whether an "individual user might be

25   color-blind" or has "some degree of tunnel vision" may affect whether a displayed image will

26   distract or not distract that user.  (*Id.* at 137:5-12)  The problem is compounded because as

27   Interval's expert conceded, "two different users may have different propensity to distraction."

DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR PROPOSED
CLAIM CONSTRUCTIONS:
'652 AND '314 PATENTS - 2:10-cv-01385-MJP

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
(206) 626-6000

-9-

1    (*Id.* at 137:24-138:7)  Thus, one user with a higher ability to focus on a word processing

2    document may not be distracted by, or even notice, an image that is displayed in an area of a

3    display screen unused by the word processing program.  Under the same conditions, a second

4    user with a lesser ability to concentrate may be easily pulled away from the same word

5    processing document by the same image.  Therefore, even if "does not distract" were measurable

6    and not subjective, it would still be subject to wide variation based on a host of factors dependent

7    on the particular user and environment, among others factors.

8        Similar to "aesthetically pleasing" in *Datamize*, whether a user considers a displayed

9    image distracting is also an inherently subjective determination because distraction is in the eye

10   of the "individual user."  (*See* Jost Decl. Ex. A (Mangione-Smith Dep.) at 135:12-17, 137:24-

11   138:7)  In *Datamize*, the Federal Circuit acknowledged that certain aspects of design such as

12   "button styles, sizes, and placements, window borders, color combinations, and type fonts" could

13   generally affect whether a screen may be considered "aesthetically pleasing."  *Datamize*, 417

14   F.3d at 1352.  Here, there are numerous factors (such as the "images in general, and size and

15   color and location") that affect whether a user would find something to be distracting.  (*See* Jost

16   Decl. Ex. A (Mangione-Smith Dep.) at 135:4-11)  A user's subjective and personal feelings

17   about a particular image, whether it is displayed in a pleasing color, and the information it

18   presents can all affect whether that particular image will "distract" a user from a primary

19   interaction.  (*See id.* and 137:18-23)  Therefore, when one skilled in the art attempts to determine

20   whether a displayed image "does not distract a user from the user's primary interaction," the

21   skilled artisan is left in a "zone of uncertainty."  *See Markman*, 517 U.S. at 390.

22       In sum, this Court should hold that all claims of the '314 Patent and claims 4-8, 11, 34,

23   and 35 of the '652 Patent are invalid as indefinite under *Halliburton* and *Datamize*.  Both the

24   limitations "unobtrusive manner" and "does not distract a user" are based on the unrestrained,

25   subjective opinion of the individual user, and the Patents fail to provide an objective standard by

26   which to define the scope of the terms.  *See Datamize*, 417 F.3d at 1350.  Additionally, the two

27   limitations are highly dependent on the infinite number of environmental factors, so that the

DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR PROPOSED
CLAIM CONSTRUCTIONS:
'652 AND '314 PATENTS - 2:10-cv-01385-MJP

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
(206) 626-6000

1   determination of whether an accused product would meet the claim limitations depends on its

2   usage in changing circumstances.  *See Halliburton*, 514 F.3d at 1254-55.  Thus, this Court should

3   hold that the claims containing these terms are invalid for indefiniteness under 35 U.S.C. § 112 ¶

4   2.

5   **III.   LEGAL PRINCIPLES APPLICABLE TO CLAIM CONSTRUCTION**

6       **A.      General Principles**

7       A patent's claims define the "invention" to be protected.  *Phillips v. AWH Corp.*, 415

8   F.3d 1303, 1312 (Fed. Cir. 2005) (en banc).  Claim language is generally given the meaning it

9   would have to one of ordinary skill in the relevant art, at the time the application was filed, in

10  view of the patent specification.  *Id.* at 1313.  "The construction that stays true to the claim

11  language and most naturally aligns with the patent's description of the invention will be, in the

12  end, the correct construction."  *Id.* at 1316 (quoting *Renishaw PLC v. Marposs Societa' per

13  Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)).

14      "Like the specification, the prosecution history provides evidence of how the PTO and

15  the inventor understood the patent."  *Phillips*, 415 F.3d at 1317.  "[T]he prosecution history can

16  often inform the meaning of the claim language by demonstrating how the inventor understood

17  the invention and whether the inventor limited the invention in the course of prosecution, making

18  the claim scope narrower than it would otherwise be."  *Id.* (citations omitted).  A court "cannot

19  construe the claims to cover subject matter broader than that which the patentee itself regarded as

20  comprising its inventions and represented to the PTO."  *Microsoft Corp. v. Multi-Tech Sys., Inc.*,

21  357 F.3d 1340, 1349 (Fed. Cir. 2004).  Moreover, "[e]xplicit arguments made during prosecution

22  to overcome prior art can lead to narrow claim interpretations because 'the public has a right to

23  rely on such definitive statements made during prosecution.'"  *Rheox, Inc. v. Entact, Inc.*, 276

24  F.3d 1319, 1325 (Fed. Cir. 2002) (citations omitted).

25      **B.      Special Rules For "Means-Plus-Function" Terms**

26      Under 35 U.S.C. § 112, ¶ 6, a claim limitation "may be expressed as a means or step for

27  performing a specified function without the recital of structure, material, or acts in support

DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR PROPOSED
CLAIM CONSTRUCTIONS:
'652 AND '314 PATENTS - 2:10-cv-01385-MJP

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
(206) 626-6000

1  thereof."  Construction of a means-plus-function claim term is a two-step process.  First, the

2  court must identify the claimed function.  *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 296

3  F.3d 1106, 1113 (Fed. Cir. 2002).  Second, the court must look to the specification and identify

4  the corresponding structure disclosed in the specification for performing the identified function.

5  *Id.*  "Corresponding structure" must not only perform the claimed function, but the specification

6  must clearly link that structure to the function recited in the claim.  *Id.*

7        For means-plus-function claims involving computer-implemented inventions, the Federal

8  Circuit has consistently required the specification to disclose structure that is more than a general

9  purpose computer or microprocessor.  *See, e.g.*, *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d

10  1339, 1348-49 (Fed. Cir. 1999); *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 521 F.3d

11  1328, 1333 (Fed. Cir. 2008).  To meet this standard, a patentee must provide a sufficiently

12  detailed description of structure corresponding to the claimed function, such as an algorithm

13  necessary to accomplish the claimed function, which "in effect 'create[s] a special purpose

14  machine for carrying out the particular algorithm.'"  *Aristocrat Techs.*, 521 F.3d at 1333 (*quoting*

15  *WMS Gaming, Inc.*, 184 F.3d at 1348).  The mere disclosure of "software" that performs a

16  function, without a description of how the software performs the function (*e.g.*, an algorithm or

17  recitation of steps) is insufficient and renders a claim invalid.  *Id.* at 1334.

18  **IV.  CLAIM CONSTRUCTION ARGUMENT**

19        1.  **"selectively displaying on the display device . . . an image or images generated
20            from the set of content data" ['652 Claims 4-8, 11; '314 Claims 10, 13][2]**

| Interval's Construction | Defendants' Construction |
|---|---|
| [choose/choosing] and display[ing] one or more "images generated from the set of content data" | [choose/choosing] and display[ing] one or more "images generated from the set of content data" according to predetermined scheduling information |

24        The parties' agree that "selectively displaying" requires choosing and displaying one or

25  more "images generated from the set of content data."  Unlike Interval's proposal, Defendants'

26  ───────────────

27  [2] The arguments in this section also apply to the claim limitations "selectively display . . . an image or images generated from a set of content data" in claims 1 and 3 of the '314 Patent, and "selective display on the display device . . . of an image or images generated from a set of content data" in claim 7 of the '314 Patent.

DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR PROPOSED
CLAIM CONSTRUCTIONS:
'652 AND '314 PATENTS - 2:10-cv-01385-MJP

-12-

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
(206) 626-6000

1  construction recognizes that "choosing" necessarily requires that there is something from which

2  the images to be displayed are chosen (*i.e.*, according to a predetermined schedule), and reflects

3  the appropriate context provided by the language of the claims.  *See Phillips*, 415 F.3d at 1314

4  ("the context of the surrounding words of the claim also must be considered in determining the

5  ordinary and customary meaning of those terms" (citation omitted)).

6      In each of the above claims, the "selectively display" step is preceded by a step of

7  acquiring or providing one or more sets of content data.  (*See e.g.*, '652, 30:26-27; '314, 29:56-

8  59, 30:24-27, 31:31-32, 32:7-8, 32:51-52)  This requires that the system control how multiple

9  images will be displayed, and the specification discloses that this control is achieved by way of a

10  schedule:  "Once one or more sets of content data has been acquired, a content display system

11  integrates scheduling information for all sets of content data to produce a schedule according to

12  which an image or images corresponding to the sets of content data are displayed on a display

13  device associated with the content display system."  ('652, 2:27-34)  The specification also states

14  that "each content display system displays images corresponding to the sets of content data in

15  accordance with predetermined scheduling information."  ('652, Abstract)  Therefore,

16  "selectively displaying" an image means more than arbitrarily choosing an image for display; the

17  image must be chosen according to the predetermined scheduling information.

18      Figure 1 of the Patents further illustrates the use of "predetermined scheduling

19  information" to choose and display an image.  Referring to the steps shown in Figure 1, the

20  specification explains that if "at least one set of content data is available for display, then, . . . the

21  available sets of content data are scheduled for display by the content providing system."  ('652,

22  10:4-8)  "Once the sets of content data have been scheduled for display," a "set of content data is

23  displayed" in the following step.  ('652, 11:34-37)  If "there are additional sets of content data to

24  be displayed," the system "display[s] a set of content data *in accordance with the previously*

25  *determined display schedule*."  ('652, 12:24-27 (emphasis added))  This explanation is also

26  consistent with the context provided by the claims themselves as addressed above.   The sets of

27  content data are first acquired (or provided) and then selectively displayed, but such selection is

DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR PROPOSED
CLAIM CONSTRUCTIONS:
'652 AND '314 PATENTS - 2:10-cv-01385-MJP

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
(206) 626-6000

1    made from a predetermined schedule.

2    Interval's arguments during prosecution also tie the "selectively displaying" limitation to

3    previously-acquired data and scheduling information.  In attempting to distinguish prior art, the

4    applicants argued that "variation in the display of images generated from content data that has

5    been acquired by the system . . . is provided by the 'means for selectively displaying,'" and

6    pointed to portions of the specification describing scheduling sets of content data for display.

7    (JPHS Ex. C1, at IL_DEFTS0007922-33)  The applicants' reliance on the scheduling disclosure

8    to distinguish the "selective displaying" limitation from prior art reinforces the requirement that

9    a proper construction of this term must include "according to a predetermined schedule."

10    In contrast, Interval's proposed construction ignores the context provided by the claim

11    language and specification.  Interval acknowledges that "selectively" involves choosing, but

12    ignores how and from where the images are being chosen for display.  The specification lacks

13    any disclosure of how to choose an image for display apart from choosing a set of content data

14    specified in a predetermined schedule.  Interval's construction fails to "naturally align[] with the

15    patent's description of the invention" and thus cannot be the "correct construction."  *See Phillips*,

16    415 F.3d at 1316 (quoting *Renishaw PLC*, 158 F.3d at 1250).

17    **2.   "images generated from a set of content data" [All Claims]**

| Interval's Construction | Defendants' Construction |
|---|---|
| audio and/or visual output that is generated from data within a set of related data | audio and/or visual output defined by a content provider that is generated from data within a set of related data |

22    The parties agree that the "images generated from a set of content data" are audio and/or

23    visual output that is generated from data within a set of related data.  Defendants' construction

24    differs from Plaintiff's because it specifies, consistent with the intrinsic record and the very

25    purpose of the invention, that the audio and/or visual output is *defined by the content provider*.

26    The Patents disclose that it is the *content provider* who defines these images within the

27    sets of content data: "Each set of content data *is formulated by a content provider* and made

DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR PROPOSED
CLAIM CONSTRUCTIONS:
'652 AND '314 PATENTS - 2:10-cv-01385-MJP

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
(206) 626-6000

-14-

1   available by a corresponding content providing system for use with the attention manager."

2   ('652, 6:53-55 (emphasis added))  Moreover, Defendants' construction takes into account the

3   very purpose of the alleged invention—"afford[ing] an opportunity to content providers to

4   disseminate their information."  ('652, Abstract; *see also id.* at 5:33-39); *see Osram GMBH v.*

5   *Int'l Trade Comm'n,* 505 F.3d 1351, 1358 (Fed. Cir. 2007) (finding that the International Trade

6   Commission erred in construing claims contrary with the purposes of the invention).  Interval's

7   claim construction expert agrees with Defendants that "the content data comes to the content

8   display system from a content provider."  (*See* Jost Decl. Ex. A (Mangione-Smith Dep.) at

9   231:16-19)  Further, the Patents repeatedly explain that the images generated from the set of

10  content data are *defined* in the content data:

- "A 'set of content data' refers to a related set of such data that is used to generate a particular display.  A 'clip' refers to a *definable portion* of a set of content data that is used to *generate a particular image. . . .*" ('652, 9:54-58 (emphasis added))

- "[E]ach set of content data 350 defines a related group of data that is used to generate a particular display and includes one or more *clips that each represent a definable portion* of the set of content data that is *used to generate a particular image.*"  ('652, 16:23-27 (emphasis added))

15  Thus, "images generated from a set of content data" cannot simply be any "audio and/or

16  visual output" that might be created by a "system" using any data from any "set of content data."

17  Rather, the "images generated from a set of content data" are "audio and/or visual output *defined*

18  *by the content provider within a collection of related data*."  *See also* Term #8 ("content

19  provider" construction), Section IV.8, *infra*.

20  Interval's construction ignores the stated purpose of the alleged invention.  Interval's

21  proposed construction would cover the formulation of images by some entity or thing *other than*

22  *the content provider*, even though such an entity was never disclosed in the specification.  Such a

23  construction, "divorced from the context of the written description," should not stand.  *See*

24  *Nystrom v. Trex Co.*, 424 F.3d 1136, 1144-45 (Fed. Cir. 2005); *see also Decisioning.com, Inc. v.*

25  *Federated Dep't Stores, Inc.*, 527 F.3d 1300, 1308-11 (Fed. Cir. 2008).

26

27

DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR PROPOSED
CLAIM CONSTRUCTIONS:
'652 AND '314 PATENTS - 2:10-cv-01385-MJP

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
(206) 626-6000

**3.** **"in an unobtrusive manner that does not distract a user of the apparatus from a primary interaction with the apparatus" ['652 Claims 4-8, 11]**

**"in an unobtrusive manner that does not distract a user of the display device or an apparatus associated with the display device from a primary interaction with the display device or apparatus" ['314 Claims 1, 3, 7, 10, 13]**

| Interval's Construction | Defendants' Construction |
|---|---|
| during a user's primary interaction with the apparatus and unobtrusively such that the images generated from the set of content data are displayed in addition to the display of images resulting from the user's primary interaction | As written, this term is inherently subjective and therefore indefinite. Alternatively, this must be limited such that the images are displayed either when the attention manager [or system] detects that the user is not engaged in a primary interaction or as a background of the computer screen |

These terms are indefinite. *See* Section II, *supra*. Courts cannot rewrite claims to preserve their validity. *Rhine v. Casio, Inc.*, 183 F.3d 1342, 1345 (Fed. Cir. 1999); *see also Becton, Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 799 n.6 (Fed. Cir. 1990) ("Nothing in any precedent permits judicial redrafting of claims."). Defendants explain below that Interval's construction must be rejected because it suffers from such fundamental flaws that "[t]he public [would] be deprived of rights supposed to belong to it, without being clearly told what it is that limits these rights.'" *Markman*, 517 U.S. at 390 (quoting *Merrill v. Yeomans*, 94 U.S. 568, 573 (1877)). To the extent the Court seeks to adopt some construction of these indefinite terms, Defendants propose a construction based on the intrinsic record.

Interval's proposed construction has several fundamental flaws. First, Interval's construction sidesteps the indefinite language in the claim term. Interval simply replaces "in an unobtrusive manner" with "unobtrusively" without providing a definition that would help the jury understand the scope of this term. Interval further compounds the problem by ignoring the claims' requirement that a user not be distracted. By stating that an image is displayed "in addition to" the display of images from the primary interaction, the construction reads out the express requirement that a user not be distracted. This requirement is stated separately from the "unobtrusive manner" limitation and cannot be disregarded. *See, e.g.*, *Tyco Healthcare*, 616 F.3d at 1257. Merely displaying images *in addition* to the primary interaction without any

DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR PROPOSED
CLAIM CONSTRUCTIONS:
'652 AND '314 PATENTS - 2:10-cv-01385-MJP

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
(206) 626-6000

-16-

1    further limitation (as Interval proposes) does not account for the requirement not to distract a

2    user.

3         Second, to the extent Interval's construction suggests that the "unobtrusive manner" and

4    "does not distract a user" limitations are met so long as the image is displayed along with images

5    associated with a primary interaction, the construction fails because nowhere does the intrinsic

6    record support this broad and counterintuitive interpretation.  Indeed, Interval's proposed

7    construction would mean that a display is "unobtrusive" and "does not distract a user" even if it

8    was as prominent as, or even on top of and *more* prominent than, the user's primary interaction,

9    so long as the image was displayed "in addition to" the primary interaction.  (*See* Jost Decl. Ex.

10   G (Mangione-Smith Dep. Ex. 6A))  For example, in Mangione-Smith Deposition Exhibit 6A

11   (below), because the yellow box is displayed *in addition* to the word processing document,

12   Interval's construction would capture a display as shown.  This is at least contrary to the

13   requirement that the display "not distract" the user from the primary interaction, or that it is

14   "unobtrusive" as the yellow box almost completely blocks the underlying document.



23        Third, Interval's construction must be rejected because it excludes the screen saver

24   embodiment described in the Patents.  *See Vitronics Corp. v. Conceptronic Inc.*, 90 F.3d 1576,

25   1583 (Fed. Cir. 1996) (observing that a construction that would exclude a preferred embodiment

26   is "rarely, if ever, correct").  The screen saver displays images when the user is not intensely

27   engaged in a primary interaction (i.e., during inactive periods) in place of, rather than in addition

DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR PROPOSED
CLAIM CONSTRUCTIONS:
'652 AND '314 PATENTS - 2:10-cv-01385-MJP

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
(206) 626-6000

-17-

1   to, the display of the primary interaction.  (*See, e.g.*, '652, 2:9-12, 3:19-22)  The specification

2   repeatedly, and without exception, discloses two embodiments—the screen saver and wallpaper

3   embodiments—by which images might be displayed in a so-called "unobtrusive manner."  Other

4   than the "screen saver" and the "wallpaper" embodiments, the specification offers no objective

5   examples of what constitutes displaying an image in an "unobtrusive manner" and provides no

6   indication of how to determine whether a user is distracted.  (*See, e.g.*, '652, 2:9-12, 3:11-31,

7   1:50-55, 3:25-31, 13:11-17)

8          Interval's litigation-induced interpretation seeking to exclude screen savers from the

9   construction of these terms (*see, e.g.,* JPHS Ex. C1, at INT00020742-43) to avoid the wealth of

10  prior art directed thereto is inconsistent with both the specification and the original prosecution

11  history.  The Patents' specification refers to the screen saver embodiment as its first example of

12  displaying "in an unobtrusive manner":

13          selectively displaying on the display device, in an unobtrusive manner that does
        not distract a user of the apparatus from a primary interaction with the apparatus,
14      an image or images generated from the set of content data.  According to a further
        aspect of the invention, <u>the</u> selective display of the image or images begins
15      automatically after detection of an idle period of predetermined duration (the
        <u>'screen saver embodiment'</u>).
16

17  ('652, 3:15-22 (emphasis added))  Further, the original application included a claim 20

18  (depending from claim 19), which contained this same limitation specifically encompassing the

19  screen saver embodiment by reciting that the images were displayed "after detection of the idle

20  period."  (*See* JPHS Ex. C1, at IL_DEFTS0007658; *see also* Jost Decl. Ex. A (Mangione-Smith

21  Dep.) at 98:14-99:3); *N. Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 938 (Fed. Cir. 1990),

22  *cert denied*, 498 U.S. 920 (1990) ("The original claims as filed are part of the patent

23  specification.").  Interval's construction of this term to exclude screen savers must therefore be

24  rejected as inconsistent with the specification.  *Phillips*, 415 F.3d at 1315 (stating that the

25  specification is usually dispositive for claim construction and "is the single best guide to the

26  meaning of a disputed term" (quoting *Vitronics*, 90 F.3d at 1582)).

27          The prosecution history confirms that the screen saver is an embodiment of the

DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR PROPOSED
CLAIM CONSTRUCTIONS:
'652 AND '314 PATENTS - 2:10-cv-01385-MJP

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
(206) 626-6000

1   "unobtrusive" display.  During the original prosecution of the '652 Patent, Interval argued that

2   this limitation included the screen saver embodiment:

3       The display of images in an *unobtrusive manner in a system as recited in Claim 1*
        *can be implemented by, for example, displaying images during an inactive period*
4       (e.g., when the user has not interacted with the apparatus for a predetermined
        period of time) of a primary interaction with the apparatus (the *'screensaver*
5       *embodiment'*), as described, for example, at page 3, lines 16-20, page 5, lines 30-
        33, and page 12, lines 16-20 of Applicants' specification.
6

7   (JPHS Ex. C1, at IL_DEFTS0007927 (emphasis added))  In addition, Interval relied on the

8   inventors' development of a screen saver program as evidence of an earlier reduction to practice

9   of a claim (then claim 19) that included this very same limitation.  Specifically, Interval

10  submitted a declaration of inventor Phillipe Piernot declaring that he developed a program that

11  "displayed an image generated from the content data as a 'screen saver.'"  (JPHS Ex. C1, at

12  IL_DEFTS0008078)  Interval then argued that the screen saver program described in Mr.

13  Piernot's declaration embodied a "'means for selectively displaying on [a] display device, in an

14  unobtrusive manner that does not distract a user of the apparatus from a primary interaction with

15  the apparatus, an image or images generated from the set of content data,' as recited in Claim

16  19."  (JPHS Ex. C1, at IL_ DEFTS0008051)

17      Interval's attempt to exclude the screen saver embodiment from the construction of this

18  claim term must be rejected as inconsistent with the specification and the description of its own

19  alleged invention during prosecution.  *See CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146,

20  1158 (Fed. Cir. 1997) (through statements made during prosecution, an applicant may commit to

21  a particular meaning for a patent term, which is then binding in litigation); *Hockerson-*

22  *Halberstadt, Inc. v. Avia Grp. Int'l, Inc.*, 222 F.3d 951, 957 (Fed. Cir. 2000) (holding that

23  statements made during prosecution were binding on the patentee so as to not "undercut the

24  public's reliance on a statement that was in the public record and upon which reasonable

25  competitors formed their business strategies").  In view of Interval's reliance on the screen saver

26  embodiment during the original prosecution, any effort by Interval to rely on statements it made

27  during reexamination regarding the claims not covering screen savers should be given no weight.

DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR PROPOSED
CLAIM CONSTRUCTIONS:
'652 AND '314 PATENTS - 2:10-cv-01385-MJP

1   Defendants maintain that these terms are indefinite and cannot be properly construed.  To

2   the extent the Court disagrees and attempts to construe these terms, Defendants submit that the

3   construction must provide a skilled artisan an objective way to determine the metes and bounds

4   of the *entirety* of these claim terms that is grounded in the intrinsic record.  The specification

5   explains that the screen saver embodiment displays information after detecting an idle condition

6   (i.e., user inactivity), "suggesting that the user is not engaged in an interaction with the computer

7   that the user would not want to have interrupted."  ('652, 8:67-9:2).  The specification defines

8   "wallpaper" as "a pattern generated in the background portions on a display screen" ('652, 1:50-

9   53), which would necessarily be behind a user's primary interaction.  Further, as explained

10  above, the inventors represented during prosecution that both of these embodiments satisfied the

11  claim limitations requiring the display of images "in an unobtrusive manner that does not distract

12  a user of the apparatus from a primary interaction with the apparatus."  Thus, if the Court

13  attempts to construe these terms, the Defendants propose a construction that at least requires that

14  the images are displayed either when the attention manager [or system] detects that the user is

15  not engaged in a primary interaction or as a background (i.e., wallpaper) of the computer screen.

16   **4.  "primary interaction" ['652 Claims 4, 34, 35; '314 Claims 1, 3, 7, 10, 13]**

| Interval's Construction | Defendants' Construction |
| --- | --- |
| any operation of the computer (or other apparatus with which the user is engaging in an interaction) other than operation that is part of the system for engaging the peripheral attention of the user | any operation of the computer (or other apparatus with which the user is engaging in an interaction) other than operation that is part of the attention manager according to the invention |

22   The parties agree that the Patents define "primary interaction."  The Patents state that

23  "'[p]rimary user interaction' is to be construed broadly and, generally, includes any operation of

24  the computer (or other apparatus with which the user is engaging in an interaction) other than

25  operation that is part of the attention manager according to the invention."  ('652, 8:14-18)

26   Defendants' construction should be adopted because it follows the definition of the term

27  in the specification as required by the patent law.  If the specification provides a definition for a

DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR PROPOSED
CLAIM CONSTRUCTIONS:
'652 AND '314 PATENTS - 2:10-cv-01385-MJP

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
(206) 626-6000

-20-

1  claim term, then the patentee's lexicography governs.  *Phillips*, 415 F.3d at 1316; *see also*

2  *Vitronics*, 90 F.3d at 1582 (the specification "acts as a dictionary when it expressly defines terms

3  used in the claims or when it defines terms by implication.").

4          Interval's proposed construction, on the other hand, departs from the specification's

5  definition by changing "attention manager according to the invention" to "the system for

6  engaging the peripheral attention of the user."  By adding "peripheral attention of the user" to its

7  construction, Interval introduces unnecessary complexity and ambiguity to this term.  Interval's

8  construction also does not align with its construction of "during operation of an attention

9  manager."  Term #8, Section IV.8, *infra*.  The Court should adopt Defendants' construction

10  because it reflects the definition of the term in the specification.  *See Phillips*, 415 F.3d at 1316.

11       **5.  "means for selectively displaying on the display device, in an unobtrusive**
12           **manner that does not distract a user of the apparatus from a primary**
         **interaction with the apparatus, an image or images generated from the set of**
13           **content data" ['652 Claims 4-8, 11]**

| Interval's Construction | Defendants' Construction |
|---|---|
| **Function**: Selectively displaying an image or images generated from the set of content data on the display device in an unobtrusive manner that does not distract a user of the apparatus from a primary interaction with the apparatus, | As set forth above, this term includes a phrase that is indefinite within the recited function; thus this term is indefinite. |
| **Structure**: One or more digital computers programmed to identify the next set of content data in the schedule and display the next set of content data in the schedule in an "unobtrusive manner that does not distract a user of the apparatus from a primary interaction with the apparatus" | **Function**: "selectively displaying on the display device, in an unobtrusive manner that does not distract a user of the apparatus from a primary interaction with the apparatus, an image or images generated from the set of content data" [as construed herein]<br><br>To the extent there is any structure disclosed that could fulfill the recited function, it is:<br><br>**Structure**:  A conventional digital computer programmed with a screen saver application program, activated by the detection of an idle period, or a wallpaper application program, that "selectively displays … image or images generated from the set of content data" [as construed herein][3] |

25          As set forth above in Section II, the requirements of the recited function—displaying

---

[3] Defendants do not concede that this (or any other structure offered for any other means-plus-function term construed herein) constitutes sufficiently definite structure to avoid indefiniteness of the claims under 35 U.S.C. § 112, ¶ 2.

DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR PROPOSED
CLAIM CONSTRUCTIONS:
'652 AND '314 PATENTS - 2:10-cv-01385-MJP

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
(206) 626-6000

1   images "in an unobtrusive manner" and that the image "does not distract a user"—are indefinite.

2   The parties further dispute what, if any, structure is disclosed in the specification for performing

3   the function recited in the claim.  This Court has observed: the "Federal Circuit has held that

4   '[i]n a means-plus-function claim in which the disclosed structure is a computer, or

5   microprocessor, programmed to carry out an algorithm, the disclosed structure is not the general

6   purpose computer, but rather the special purpose computer programmed to perform the disclosed

7   algorithm.'"  *Digital Control Inc. v. Charles Mach. Works*, No. C03-103P, 2003 WL 25782745,

8   at *6 (W.D. Wash. Dec. 11, 2003) (Pechman, J.) (quoting *WMS Gaming Inc.*, 184 F.3d at 1349).

9   The specification must do more than simply repeat or restate the function recited in the claim; it

10  must describe the steps the software would perform—or the "algorithm"—to implement the

11  recited function.  *Aristocrat Techs.*, 521 F.3d at 1333-34.

12          Defendants' identification of structure points to the only disclosure in the specification

13  that could possibly be considered an algorithm as required by the Federal Circuit.  The

14  specification of the '652 Patent discloses only two possible "algorithms" to display information

15  in a way that might be "in an unobtrusive manner":  (1) through use of a "screen saver" after an

16  idle period when the user is not actively engaged in a primary interaction with the computer and

17  (2) through the use of a "wallpaper" program that displays the images as the background of the

18  screen.  (*E.g.*, '652, 3:19-31, 3:25-30; JPHS Ex. C1, at IL_DEFTS0007927-28).[4]

19          Interval's purported identification of structure, on the other hand, merely parrots the

20  indefinite functional language in the claims and fails to identify any algorithm that is actually

21  capable of accomplishing that function.  Thus, Interval's "structure" results in improper

22  functional claiming that places no meaningful limitations on the manner in which that function is

23  accomplished and would render the claim invalid as indefinite.  *Aristocrat Techs.*, 521 F.3d at

24  1334 (finding a purported algorithm insufficient where it "simply describes the function to be

25  performed" rather than "how the function is performed").   Such a construction would capture

26  ─────────────────
    [4] This does not mean the term is not indefinite because an identification of structure cannot remove the functional
    requirements that images are displayed in "an unobtrusive manner" and "do[] not distract a user . . . from a primary
27  interaction."

DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR PROPOSED
CLAIM CONSTRUCTIONS:
'652 AND '314 PATENTS - 2:10-cv-01385-MJP

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
(206) 626-6000

-22-

any general purpose computer programmed to perform the recited function regardless of whether it corresponds to any algorithm in the specification, a result that has been flatly rejected by the Federal Circuit. *Id.* at 1336. Therefore, Interval's purported identification of structure must be rejected or, if accepted as the only supporting disclosure, claim 4 and its dependent claims are invalid as indefinite for lacking sufficient disclosure of supporting structure.

Any attempt by Interval to argue that the screen saver embodiment must be excluded as corresponding structure in view of the reexamination of the '652 Patent must be rejected as inconsistent with the specification and the original intrinsic record. *See*, Disputed Term #3, *supra*.

**6. "each content provider provides its content data to [a/the] content display system independently of each other content provider" ['314 All Claims]**

| Interval's Construction | Defendants' Construction |
| --- | --- |
| no construction needed; in the alternative: each content provider provides its content data to the content display system without being influenced or controlled by any other content provider | Each content provider transmits its content data to [a/the] content display system without being transmitted through, by or under the influence or control of any other content provider |

The main dispute between the parties is whether "independently" encompasses a content provider transmitting data through (or by) a second content provider. Defendants' construction takes into account both the intrinsic evidence and the ordinary usage of the term "independently" in a way that will provide the jury with a more useful and objectively measurable construction. As reflected by Defendants' construction, a content provider does <u>NOT</u> provide its content data "independently" if one content provider's data is provided "through, by or under the influence or control of any other content provider." (*See* JPHS Ex. 1, at 38 (Interval's construction conflicts with both sides dictionary definitions of "independent")).

Interval's construction appears to encompass a situation where one content provider sends content to a user through another content provider, but the '314 Patent does not disclose communications between content providers. (*See* '314, Fig. 2, 14:11-14 (solid lines show communications that do occur and dashed lines show communications that may occur, none of

DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR PROPOSED
CLAIM CONSTRUCTIONS:
'652 AND '314 PATENTS - 2:10-cv-01385-MJP

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
(206) 626-6000

1  which extend between content providers))  This evidences that in the context of the Patents,

2  "independently" providing content data to a content display system must mean that one content

3  provider's data is not transmitted through any other intermediate content provider before

4  reaching the content display system.

5      The prosecution history confirms Defendants' construction.  The term "independently"

6  providing content data was added by amendment to overcome a prior art rejection.  (JPHS Ex.

7  D1, at IL_DEFTS0006293)  Interval distinguished the prior art (Farber) as not disclosing

8  "sending data *directly* from the content providers … to the user computer." (*Id.* (emphasis

9  added))  Therefore, "independently" providing content data cannot be construed, as Interval

10  proposes, to permit the content data to pass between other content providers before reaching a

11  user's computer; to do so would contradict Interval's basis for distinguishing the prior art.  *See*

12  *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995) ("Claims may not

13  be construed one way in order to obtain their allowance and in a different way against accused

14  infringers.") (citation omitted).

15      **7.  "user interface installation instructions for enabling provision of a user interface**
        **that allows a person to request the set of content data from the specified**
16      **information source" ['652 Claims 15-18]**

17

| Interval's Construction | Defendants' Construction |
|---|---|
| "instructions" for enabling provision of an interface that enables a person to request the set of content data from a specific source of information | "instructions" that enable content providers to install a user interface in the content provider's information environment so that users can request a particular set of content data representing the image(s) to be displayed from the specified content provider |

21      The key differences between the parties' proposals is (1) Defendants' inclusion of the

22  word "install" based on the claim language and (2) Interval's refusal to acknowledge that the

23  patent only describes the interface as installed in the content provider's information environment.

24      According to the plain language of the term, the "user interface *installation* instructions"

25  must enable content providers to *install* a user interface.  Interval's proposal disregards the plain

26  meaning of the claim term by reading out any "install" or "installation" requirement.  Interval

27  instead construes this term to vaguely require "provision of an interface," which amounts to no

DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR PROPOSED
CLAIM CONSTRUCTIONS:
'652 AND '314 PATENTS - 2:10-cv-01385-MJP
-24-

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
(206) 626-6000

1   more than displaying an interface.  But installing a user interface and displaying an interface are

2   very different things—and only the former is supported by the plain language of the claim term

3   and intrinsic evidence.  The specification describes "user interface installation instructions 333

4   that enable content providers to *install* a user interface in the information environment (e.g., Web

5   page) of the content provider so that users can request sets of content data from the content

6   provider." ('652, 16:10-14 (emphasis added))  This express definition cannot be ignored.  *See*

7   *Phillips*, 415 F.3d at 1316.

8         The parties also dispute whether the user interface is installed "in the content provider's

9   information environment," as Defendants propose.  Interval's proposal omits this requirement

10   even though the specification defines user interface installation instructions as enabling "content

11   providers to install a user interface in the *information environment (e.g., Web page) of the*

12   *content provider*." ('652, 16:10-14 (emphasis added))  This express definition in the patent

13   cannot be ignored as Interval's construction would do.  *See Phillips*, 415 F.3d at 1316.  The

14   patent further describes, for example, the information environment of the content provider as the

15   provider's web page; the user interface is graphical buttons on the web page that permit the user

16   to "visit the Web page to request particular sets of content data." ('652, 18:61-19:5)

17         The parties also dispute whether the user interface must permit a user to request "a

18   particular set of content data representing the image(s) to be displayed from the specified content

19   provider" as Defendants propose.  Defendants' proposal follows from the specification, which

20   repeatedly states that the "user interface" permits the user to choose a particular set of content

21   data.  ('652, 2:26-28 ("The content providing systems provide user interface tools that enable a

22   *particular set of content data* to be requested" (emphasis added)); *see also id.* at 6:64-67, 18:60-

23   62)  Defendants' construction follows a co- inventor's explanation made during prosecution that

24   the alleged invention allowed a user visiting a web site to select an image displayed thereon "so

25   as to cause the *content data representing the image to be transferred from*" the web site to the

26   user.  (JPHS Ex. C1, at IL_DEFTS0008077 (emphasis added))  In reexamination, Interval also

27   stated: "language of claims 15, 17 and 18 thus *plainly requires* a user interface to be provided so

DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR PROPOSED
CLAIM CONSTRUCTIONS:
'652 AND '314 PATENTS - 2:10-cv-01385-MJP

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
(206) 626-6000

-25-

that a user (person) can request *particular* content data."  (JPHS Ex. C1, at INT00020712 (emphasis added))  Interval's construction improperly ignores these unambiguous statements in the intrinsic record.  *See Phillips*, 415 F.3d at 1316.

### 8. "during operation of an attention manager"[5] ['652 Claims 15-18]

| Interval's Construction | Defendants' Construction |
|---|---|
| during the operation of a system for engaging at least a part of the user's attention that is not occupied by the user's primary interaction with the apparatus | during operation of a system that displays images to a user either when the program detects that the user is not engaged in a primary interaction or as a background of the computer screen |

The parties' dispute regarding the construction of the phrase "during operation of an attention manager" revolves around Interval's attempt to adopt a construction that provides no meaningful boundaries for the term.  In contrast, Defendants' construction is consistent with the intrinsic record by construing the "operation of an attention manager" according to the only description in the specification that gives objective boundaries on the scope of this limitation, the "screen saver" and "wallpaper" embodiments.

The specification does not define the term "attention manager."  There is no statement in the specification that the "attention manager" is a computer program or an electronic device.  It seems that "attention manager" is nothing more than a vague concept that applicants used to refer to their invention.  To the extent the attention manager is described, it is intended to control the display device so that the images are displayed to the user in the manner consistent with the invention by making use of "unused capacity" of the display device.  ('652, 2:7-9)  The Patents fail to disclose objective criteria for determining whether a displayed image makes use of "unused capacity" of a display device, other than by displaying images as part of a screensaver or wallpaper.  ('652, 3:11-31)

The prosecution history confirms that "attention manager" should be construed as Defendants propose.  During prosecution, the Examiner rejected the application for the '652

---

[5] This term in the preambles of claims 15-18 should be read as a limitation on these claims at least for the reason that the body of these claims rely on the preamble phrase "display of an image."  *E.g.*, *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 687 F.3d 1300, 1311 (Fed. Cir. 2012).  Indeed, both Interval and Defendants propose construing this term.

DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR PROPOSED CLAIM CONSTRUCTIONS:
'652 AND '314 PATENTS - 2:10-cv-01385-MJP

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
(206) 626-6000

-26-

1   Patent over U.S. Patent No. 5,572,643 (the "Judson patent"), which teaches a method for

2   displaying messages to a computer user in an internet browser while the user is waiting for the

3   webpage to load.  (*See* Jost Decl. Ex. B, 8:26-49 (Claim 1))  In distinguishing its alleged

4   invention from the Judson patent, applicants acknowledged that their invention did not extend to

5   all uses of an "unused capacity" when they argued that "the instant invention uses a *different*

6   *unused capacity* than that used by the method taught by Judson."  (JPHS Ex. C1, at

7   IL_DEFTS0007928)  Applicants explained that their purported invention made use of the

8   "unused capacity" of a display device and of the attention of a person in the vicinity of the

9   display device through two implementations, the screen saver and the wallpaper embodiments:

> The display of images in an unobtrusive manner in a system as recited in Claim 1
> can be implemented by, for example, displaying images during an inactive period
> (e.g., when the user has not interacted with the apparatus for a predetermined
> period of time) of a primary interaction with the apparatus (the '*screensaver*
> *embodiment*'), as described, for example, at page 3, lines 16-20, page 5, lines 30-
> 33, and page 12, lines 16-20 of Applicants' specification. The display of images
> in an unobtrusive manner in a system as recited in Claim 1 can also be
> implemented by displaying images during an active period of a primary
> interaction with the apparatus, but in a manner that does not distract the user from
> the primary interaction (the '*wallpaper embodiment*'), as described, for example,
> at page 3, lines 20-27, page 6, lines 2-8, and page 12, lines 20-28 of Applicants'
> specification.

18   (JPHS Ex. C1, at IL_DEFTS0007927-7928 (emphasis added))  Having relied on the

19   specification's description of both the screensaver and wallpaper embodiments to distinguish the

20   purported invention from prior art that made of other "unused capacity," Interval cannot now

21   expand the scope of the invention during litigation.  *See CVI/Beta Ventures*, 112 F.3d at 1158.

22         In contrast to Defendants' construction, Interval's nebulous construction has no meaning

23   whatsoever and covers subject matter broader than what is provided for in the specification.

24   Further, despite the fact that this is a structural limitation (the parties agree that it is a "system"),

25   Interval's construction defines only an intended function or goal and not a structure of the

26   attention manager.  This is an improper construction of a structural term:  "Where a claim uses

27   clear structural language, it is generally improper to interpret it as having functional

DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR PROPOSED
CLAIM CONSTRUCTIONS:
'652 AND '314 PATENTS - 2:10-cv-01385-MJP

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
(206) 626-6000

1    requirements." *Schwing GmbH v. Putzmeister Aktiengesellschaft*, 305 F.3d 1318, 1324 (Fed.

2    Cir. 2002).

3         In any event, it is impossible to determine whether the goal recited in Interval's

4    construction has been satisfied because there is no way to determine whether a user's attention

5    can be or has been divided into two distinct and separately identifiable portions – one portion

6    engaged with the primary interaction, and another portion that is not.  Even Interval's expert

7    conceded that he, a skilled artisan, would be unable to state where a user's peripheral attention

8    begins and primary attention ends.  (*See* Jost Decl. Ex. A (Mangione-Smith Dep.) at 180:16-24;

9    Jost Decl. Ex. H (Mangione-Smith Dep. Ex. 7A))  Further, assuming that attention could be

10   divided this way, Interval's expert confirms that many factors affect a user's attention.  (*See* Jost

11   Decl. Ex. A (Mangione-Smith Dep.) at 180:16-24, 181:22-182:20)  Yet, the Patents provide no

12   description of how to assess such factors to make an objective determination of where a user's

13   attention is focused.  For example, if a user's attention is on a word processing document, it is

14   unclear whether the user's attention to the primary interaction ends at the edge of the word

15   processing document, inside the text of the document, or just outside the borders of the

16   document.

17        By defining the attention manager as engaging "*at least* a part of the user's attention that

18   is not occupied by the user's primary interaction," Interval's broad construction may be

19   misunderstood as allowing for an attention manager that engages a portion (or all) of the user's

20   attention that is directed to a primary interaction.  This is contrary to the very purpose of the

21   alleged invention, which is purportedly directed to engaging attention NOT used by the user's

22   primary interaction.  This construction also is in conflict with the only two potential

23   embodiments described in the specification for the "attention manager."

24        Defendants proposed construction should be adopted because only it gives objective

25   meaning to the term "attention manager" and is consistent with the patent disclosure and

26   Interval's arguments during prosecution that its alleged invention makes use of "unused

27   capacity" of the display device and attention of the user by displaying images using a screen

DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR PROPOSED
CLAIM CONSTRUCTIONS:
'652 AND '314 PATENTS - 2:10-cv-01385-MJP

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
(206) 626-6000

1   saver or a wallpaper.  (*See* '652, 3:20-22, 8:9-46 (for idle period detection); *see also id.* at 1:51-

2   52, 3:25-31 (for wallpaper as background))

3       **9.   "means for acquiring a set of content data from a content providing system"**
        **['652 Claim 4]**

4

| Interval's Construction | Defendants' Construction |
|---|---|
| FUNCTION: acquiring a set of content data from a content providing system | **Function**: acquiring a set of content data from a content providing system |
| STRUCTURE: A digital computer capable of communicating with a content providing system via a network and programmed to perform at least the following steps:  (1) providing a user with an interface to directly request a particular set of content data, (2) indicating to the content provider the particular set of content data requested by the user, and (3) obtaining the particular set(s) of content data requested by the user at the content display system | **Structure**: A digital computer connected to a content providing system via a network and programmed to perform the steps:  (1) providing a user with an interface to directly request a particular set of content data, (2) indicating to the content provider the particular set of content data requested by the user, (3) receiving a set of instructions at the content display system that identify the site from which the set of content data is to be acquired, (4) downloading the particular set(s) of content data requested by the user at the content display system. |

        The parties' agree that the function of the "means for acquiring" is "acquiring a set of
content data from a content providing system."  The parties also agree that the identified
structure must perform steps (1) and (2) in their respective identifications of the structure.  The
main difference between the parties' proposals are whether the structure must include step (3) in
Defendants' proposal, which specifies that a digital computer be programmed to receive "a set of
instructions at the content display system that identify the site from which the set of content data
is to be acquired" and a dispute over "downloading" as compared to "obtaining."

        To properly constitute corresponding structure of a means-plus-function term directed to
software, the specification must disclose an algorithm and associate it with the function.
*Aristocrat Techs.*, 521 F.3d at 1333-34.  The Patents' specification discloses acquisition
instructions as necessary in the only possible "algorithm" for performing the recited function and
"the acquisition instructions 331 include *information identifying the site from which the set of
content data can be obtained.*"  ('652, 19:8-14 (emphasis added))  As explained by Defendants'

DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR PROPOSED
CLAIM CONSTRUCTIONS:
'652 AND '314 PATENTS - 2:10-cv-01385-MJP

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
(206) 626-6000

-29-

1   expert Dr. Bruce Maggs, the acquisition instructions are "necessary for the algorithm disclosed

2   in the specification to successfully practice the function of acquiring a set of content data from a

3   content providing system."  (*See* Maggs Decl., at ¶ 46.)  Thus, these instructions must be

4   included in the structure because the specification identifies no way to acquire data from the

5   content providing systems without instructions identifying the sites from which to obtain the

6   content data.  *See Micro Chem.*, *Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1258 (Fed. Cir.

7   1999) ("112, ¶ 6 requires . . .  identification of the structure in the written description necessary

8   to perform that function.").  Interval's claim construction expert, Dr. Mangione-Smith, agreed

9   that to acquire content data, the user's content providing system needed an "address" or "some

10  information, even if it's relatively indirect and high level," to identify the location of the source

11  of the content data, or the "content providing system."  (*See* Jost Decl. Ex. A (Mangione-Smith

12  Dep.) at 218:7-220:6)  Thus, Defendants step (3) must be included as it is a necessary part of the

13  "structure" for performing the claimed function.

14          The parties also dispute the corresponding structure disclosed in the specification for how

15  content data is acquired.  Both parties' constructions require that the digital computer be

16  "connected to" or "communicat[e] with" a "content providing system via a network."  Consistent

17  with this "network requirement, Defendants' construction that the digital computer "download[]"

18  content data, rather than merely "obtain[]" content data.  "Downloading" more accurately

19  describes how content data is acquired given that it is acquired over a network.  In contrast,

20  obtaining," as proposed by Interval, is overly broad as it encompasses acquiring content data

21  from local, non-networked sources, which applicants disclaimed in distinguishing a prior art

22  reference, "Pirani," during prosecution:

23          Pirani et al. contemplate that advertisements are to be integrated into, and
            displayed during operation of, software that is installed on a computer via
24          'conventional' means (e.g., by installing software stored on a floppy disk or CD-
            ROM), not software that is obtained *via a computer network*.  Consequently,
25          Pirani et al. do not teach a system for use with an apparatus in which the system
            includes 'means for acquiring a set of content data from a content data from a
26          content providing system,'

27  (JPHS Ex. C1, at IL_DEFTS0007921 (emphasis added))

DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR PROPOSED
CLAIM CONSTRUCTIONS:
'652 AND '314 PATENTS - 2:10-cv-01385-MJP

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
(206) 626-6000

-30-

1   Dr. Maggs similarly concluded that this limitation required "downloading" because the

2   Patents describe a "set of content data" that is stored locally on the content display system after it

3   is acquired from a network.  (*See* Maggs Decl., at ¶ 49 (citing '652, 21:20-23))  Dr. Maggs also

4   observed that patent's updating content data refers to "mak[ing] changes to the database as

5   necessary."  (*Id.* (citing '652, 18:32-37, 24:42-58))  Dr. Maggs opined that these disclosures—

6   requiring local storage of data acquired from a network—would be understood by one skilled in

7   the art to mean that the digital computer performs "downloading" of content data.  (*Id.*)

8   Consistent with the specification and prosecution history, a proper construction of this

9   term must be limited to a structure that includes steps (3) and (4) as proposed by Defendants.

10   **10.   "content provider" ['314 All Claims]**

| Interval's Construction | Defendants' Construction |
|---|---|
| No construction necessary; in the alternative: a system that provides one or more "sets of content data" | An entity that formulates one or more "sets of content data" |

14   The parties' dispute regarding the construction of "content provider" centers on Interval's

15   attempt to conflate "content provider" with "content providing system."  As the Patents explain,

16   the "content provider" is an entity that formulates a "set of content data," whereas the "content

17   providing system" is a tool a "content provider" may use to make a "set of content data"

18   available to the attention manager.  (*See, e.g.*, '314, Abstract ("[e]ach set of content data is

19   formulated by a content provider"), 6:62-64 ("[e]ach set of content data is formulated by a

20   *content provider* and made available by a *corresponding content providing system*) (emphasis

21   added), 2:31-35 (same))  Moreover, the very purpose of the invention is to allow *content

22   providers* to disseminate their information.  (*See* '314, Abstract, 5:41-47; *see also id.* at 1:37-41

23   (referring to information providers as entities such as America Online, Prodigy and

24   CompuServe))  Further, the use of both terms "content provider" and "content providing system"

25   (in claims 10 and 13) highlights the necessary distinction between their constructions.  *See

26   Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 n.3 (Fed. Cir. 2006) ("In

27   the absence of any evidence to the contrary, we must presume that the use of … different terms

DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR PROPOSED
CLAIM CONSTRUCTIONS:
'652 AND '314 PATENTS - 2:10-cv-01385-MJP

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
(206) 626-6000

  
in the claims connotes different meanings.") (citation omitted).  Clearly, "content provider" does

not refer to some disembodied system, but rather to the entities that formulate the content for

dissemination.

11.   **"content data scheduling instructions for providing temporal constraints on the display of the image or images generated from the set of content data"** ['652 Claims 15, 17, 18]

| Interval's Construction | Defendants' Construction |
|---|---|
| "instructions" that affect the duration, order, timing, and/or frequency of the display of the "image or images generated from the set of content data" | instructions that can be tailored by a content provider that specify the time(s) at which image(s) generated from a set of content data may be displayed. |

The parties' first dispute about this term is whether "content data scheduling

instructions" refers to instructions that can be "tailored" by the content provider as twice

explained in the Patents' Summary of the Invention.

The Summary of the Invention states that the control instructions, which include the

content data scheduling instructions, "could be acquired from a content provider, or any one or

all of the sets of instructions could be acquired from an application manager that provides

generic sets of instructions that can be tailored as necessary or desirable by a content provider."

('652, 2:57-63, 3:3-8)  Thus, the content data scheduling instructions either originate from (and

thus are tailored by) the content provider, or are provided by an application manager in a form

that also can be tailored by the content provider.  The Summary of the Invention later affirms

that the content data scheduling instructions can be tailored by the content provider, stating that

"the attention manager allows content providers to tailor particular aspects of the attention

manager as desired by the content provider, such as . . . the display scheduling."  ('652, 5:41-47)

These passages characterize the invention as a whole, rather than merely describing a preferred

embodiment, showing that the inventors intended "content data scheduling instructions" to refer

to instructions that can be tailored by the content provider.  *See C.R. Bard, Inc. v. U.S. Surgical

Corp.*, 388 F.3d 858, 864 (Fed. Cir. 2004) ("Statements that describe the invention as a whole,

rather than statements that describe only preferred embodiments, are more likely to support a

DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR PROPOSED
CLAIM CONSTRUCTIONS:
'652 AND '314 PATENTS - 2:10-cv-01385-MJP

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
(206) 626-6000

-32-

1   limiting definition of a claim term."); *see also Netcraft Corp. v. eBay, Inc.*, 549 F.3d 1394, 1398-

2   99 (Fed. Cir. 2008) (recognizing it is proper to use the Abstract and Summary of the Invention to

3   construe the claim terms because these describe the invention as a whole).

4          The remainder of the specification confirms that the "content data scheduling

5   instructions" can be tailored by the content provider.  The specification states that "the content

6   data scheduling instructions 322 are usually the same for each set of control instructions 320 and

7   provide a generic set of scheduling instructions that can be tailored by a content provider."

8   ('652, 15:61-67; *see also id.* at 15:41-45)  The specification also describes various ways the

9   content provider can tailor the instructions.  ('652, 16:65-17:15)  Accordingly, Defendants'

10  proposed construction of this claim phrase properly reflects the inventors' use of the term

11  "content data scheduling instructions" to refer to instructions that can be tailored by the content

12  provider.

13         The parties' second dispute regarding this term relates to the express requirement in the

14  claims that the scheduling instructions provide "temporal constraints" on the display of images.

15  Defendants' construction accounts for the "temporal constraints" limitation by requiring that the

16  scheduling instructions specify the time(s) at which image(s) generated from a set of content data

17  may be displayed.

18         In contrast, Interval's construction ignores the "temporal constraints" requirement and

19  attempts to include the functions performed by any one of the four types of "content data

20  scheduling instructions" disclosed in the specification  ('652, 4:47-55, 16:65-17:28 ("duration

21  instructions," "sequencing instructions," "timing instructions," and "saturation instructions"))

22  The additional requirement that the scheduling instructions provide "temporal constraints" is

23  directed to one of the four types of scheduling instructions disclosed in the specification—

24  instructions for specifying "particular times or ranges of times at which a set of content data 350

25  can or cannot be displayed ('timing instructions')."  ('652, 17:12-15)  This is evident not only

26  from the Patents' disclosure, but also from the plain meaning of "temporal constraint"—a

27  restriction on the time at which images can be displayed.  (*See, e.g.*, Jost Decl. Ex. C, at 425

DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR PROPOSED
CLAIM CONSTRUCTIONS:
'652 AND '314 PATENTS - 2:10-cv-01385-MJP

1   (defining "temporal" as "of, pertaining to, or limited by time" and "constraint" as "a

2   restriction"))

3          Interval's construction reads out the "temporal constraints" limitation by encompassing

4   other types of instructions that affect ordering and maximum number of times that images can be

5   displayed.  These instructions do not place a <u>temporal</u> constraint on the display of images.  Even

6   Interval's expert referred to "temporal information" as "relating to when to display the set of

7   content data."  (Jost Decl. Ex. A (Mangione-Smith Dep.) at 169:17-20)  Interval's construction

8   thus violates the principle that "claims are interpreted with an eye toward giving effect to all

9   terms in the claim." *Bicon, Inc.*, 441 F.3d  950-52.

10         Other words used in the claims confirm Defendants' constructions.  *Phillips*, 415 F.3d at

11  1314 ("the context of the surrounding words of the claim also must be considered").  Claims 14,

12  15, and 17 of the '652 Patent all recite "content data scheduling instructions for providing

13  temporal constraints on the display of the image."  These claims additionally recite that the

14  content data scheduling instructions "further compris[e]" (1) "duration instructions," (2)

15  "sequencing instructions," and (3) "saturation instructions," respectively.  ('652, 32:26-34,

16  32:52-55, 33:9-13)  Notably absent from this list is any further statement in the claims directed to

17  "timing instructions" that specify "particular times or ranges of times at which a set of content

18  data 350 can or cannot be displayed ('timing instructions')" because the language "temporal

19  constraints" already addresses the timing instructions.  ('652, 17:12-15)  Accordingly, duration

20  instructions, sequencing instructions, and saturation instructions must each impose a different

21  requirement than the separately recited "content data scheduling instructions for providing

22  temporal constraints."  *See Primos, Inc. v. Hunter's Specialties, Inc.*, 451 F.3d 841, 848 (Fed.

23  Cir. 2006) (holding that when separate terms are expressly recited in a claim, the terms cannot

24  mean the same thing).  Therefore, "temporal constraints" must be construed to mean "particular

25  times or ranges of times at which a set of content data can or cannot be displayed," consistent

26  with the specification's disclosure and the plain meaning of "temporal constraints."

27

DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR PROPOSED
CLAIM CONSTRUCTIONS:
'652 AND '314 PATENTS - 2:10-cv-01385-MJP

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
(206) 626-6000

-34-

12.      "**content data update instructions for enabling acquisition of an updated set of content data from an information source that corresponds to a previously acquired set of content data**" ['652 Claim 18]

| Interval's Construction | Defendants' Construction |
|---|---|
| "instructions" that specify when to obtain an updated version of a set of content data and the location from which to obtain such updated version | "instructions" that can be tailored by the content provider that specify when to obtain an updated version of a previously acquired set of content data and the location from which to obtain such updated version |

The parties have only a single dispute regarding this claim limitation—whether the "content data update instructions" can be tailored by the content provider as indicated in the Patents' Summary of the Invention.  For example, the summary states that "the attention manager allows content providers to tailor particular aspects of the attention manager as desired by the content provider, such as the acquisition of updated sets of the content provider's content data (e.g., the frequency of such updates)."  ('652, 5:39-45)  Similarly, the Summary of the Invention also explains that the content data acquisition instructions, which include the claimed content data update instructions, "could be acquired from a content provider, or any one or all of the sets of instructions could be acquired from an application manager that provides generic sets of instructions that can be tailored as necessary or desirable by a content provider."  ('652, 2:63-67, 3:3-8)  Because these passages describe the invention as a whole, and not merely a preferred embodiment, they show that the applicants used "content data update instructions" to refer to instructions that can be tailored by the content provider.  *See C.R. Bard, Inc.*, 388 F.3d at 864.  The remainder of the specification confirms that the "content data update instructions" can be tailored by the content provider as proposed by Defendants.  For example, the specification states that "[t]he content data acquisition instructions 330—*in particular*, the content data update instructions 332—are also tailored by content providers as appropriate for particular sets of content data 350."  ('652, 17:58-61 (emphasis added), 16:1-9)

DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR PROPOSED
CLAIM CONSTRUCTIONS:
'652 AND '314 PATENTS - 2:10-cv-01385-MJP

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
(206) 626-6000

-35-

1

2

**13. "content display system scheduling instructions for scheduling the display of the image or images on the display device" ['652 Claim 18]**

| Interval's Construction | Defendants' Construction |
|---|---|
| "instructions" that implement a display schedule by determining which image or images generated from the "set(s) of content data" will be displayed and mediating conflicts between the display requirements of multiple "sets of content data" | "instructions" that implement a display schedule for a particular content display system by determining the display order and display duration for image(s) generated from each available set of content data |

While the parties agree that "content display system scheduling instructions" implement a display schedule, they dispute whether the instructions implement a display schedule for a particular content display system, as reflected in Defendants' construction.  This requirement comes from the plain language of the claim, which recites that the instructions schedule images for display on "*the* display device."  *See Phillips*, 415 F.3d at 1314 ("the context in which a term is used in the asserted claim can be highly instructive").  The Summary of the Invention likewise indicates that these instructions implement a schedule for a particular display system because the content display system itself implements the schedule:  "a content display system integrates scheduling information for all sets of content data to produce a schedule according to which an image or images corresponding to the sets of content data are displayed on a display device associated with the content display system." ('652, 2:28-34, 7:2-7)  Since the particular content display system implements the display schedule, it necessarily follows that the schedule is for that particular content display system.

The parties also dispute what the "content display system scheduling instructions" must accomplish.  Defendants' proposed construction reflects the Patents' description of the instructions' required function: "Generally, determining a display schedule involves specifying the *order* in which the sets of content data are to be displayed and the *duration of time* for which each set of content data is to be displayed." ('652, 10:19-23 (emphasis added))  Thus, Defendants' construction should be adopted because it properly reflects the plain language of the claim, and the specification.

DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR PROPOSED
CLAIM CONSTRUCTIONS:
'652 AND '314 PATENTS - 2:10-cv-01385-MJP

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
(206) 626-6000

**14. "instructions" ['652 Claim 15, 16, 17, 18; '314 All Claims]**

| Interval's Construction | Defendants' Construction |
|---|---|
| Either (a) data related to the accomplishment of a function and/or (b) a statement or expression that can be interpreted by a computer that specifies a function to be performed by a system | A statement in a programming language that specifies a function to be performed by a system |

The primary dispute between the parties concerning the term "instructions" is whether "instructions" can be satisfied solely by "data related to the accomplishment of a function" as Interval proposes. Although Interval and Defendants cite the same intrinsic evidence (shown below), Interval's construction misinterprets this evidence to mean that an "instruction" *is* "data."

- "Each of the functional components are represented by a set of instructions *and/or* data" ('652, 14:53-54 (emphasis added))

- "[S]ets of instructions *may include*, if appropriate, data related to accomplishment of the functions associated with the set of instructions" ('652, 14:55-57 (emphasis added))

The first quote indicates that "instructions" and "data" are different things because functional components can be represented by one or the other. If "data" is a type of "instructions," then the phrase "instructions and/or data" would not make sense. The second quote states that "instructions" may include "data," but "instructions" are not themselves "data." These statements in the specification and the Defendants' proposed construction are also entirely consistent with the common usage of the term "instruction" as used in the field of computer software. In the context of computer software, "computer instruction" means "[a] statement in a programming language, specifying an operation to be performed by a computer and the address or value of the associated operands." (Jost Decl. Ex. D, at 193 (see definition of "computer instruction" at "(2) (A) (software)")) In other words, instructions might include data (e.g., "value of the associated operands"), but instructions cannot be data alone. (*See* Jost Decl. Ex. E, at 720 (see definition of "operand" at "(1) (mathematics of computing) (software)"))

DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR PROPOSED
CLAIM CONSTRUCTIONS:
'652 AND '314 PATENTS - 2:10-cv-01385-MJP

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
(206) 626-6000

-37-

1

2

**15. "means for displaying one or more control options with the display device while the means for selectively displaying is operating" ['652 Claim 4]**

| Interval's Construction | Defendants' Construction |
|---|---|
| **Function**: displaying one or more control options with the display device while the means for selectively displaying is operating<br><br>**Structure**: One or more digital computers programmed to provide a dialog box that includes a list of one or more of the following control options: (1) terminate the operation of the attention manager, (2) begin display of the next schedule set of content data, (3) begin display of the previous scheduled set of content data, (4) remove a set of content data from the display schedule, (5) prevent a set of content data from being displayed until it has been updated, (6) modify the display schedule in response to a user's identified satisfaction with a set of content data, (7) establish a link with an information source, (8) provide an overview of all of the content data available for display by the attention manager, (9) maintain display of the current set of content data, or (10) remove the control option interface and structural equivalents. | **Function**:  displaying one or more control options with the display device while the means for selectively displaying is operating<br><br>**Structure:** one or more digital computers programmed to provide a dialog box that includes a list of one or more of the following control options: perform at least one of steps 501 (Want to display the next set of content data in the schedule?), 502 (Want to display the previous set of content data in the schedule?), 503 (Want to remove the current set of content data from the schedule?), 504 (Want to prevent display of the current set of content data until that set of content data has been updated?), and 505 (Want to specify a satisfaction level for the current set of content data?), and structural equivalents |

The parties agree that the function of this means-plus-function term is "displaying one or more control options with the display device while the means for selectively displaying is operating."  Prior to the stay, the parties agreed that the structure identified in Defendants' proposed construction was correct.  In fact, Interval served a declaration by Dr. William Mangione-Smith opining that the corresponding structure is that structure identified in Defendants' construction.  (Jost Decl. Ex. F, at ¶ 38)  Now, after the stay, Interval broadened its proposed structure such that this claim limitation could be satisfied by displaying any one of ten control options, including five control options that were not identified by its own expert. Because the structure the parties originally agreed upon is correct, Defendants' proposed construction should be adopted.

Interval's new construction overreaches.  "[I]n order to qualify as corresponding structure, the structure must not only perform the claimed function, but the specification must clearly associate the structure with performance of the function."  *JVW Enter., Inc. v. Interact*

1    *Accessories, Inc.*, 424 F.3d 1324, 1330 n.1 (Fed. Cir. 2005) (citation omitted).  Further, the

2    corresponding structure of a computer-implemented feature is limited to the "special purpose

3    computer programmed to perform the disclosed algorithm."  *WMS Gaming*, 184 F.3d at 1349.

4    Accordingly, the corresponding structure of this means-plus-function term cannot cover the

5    display of anything that might be a control option, even if it is disclosed in the specification and

6    can perform the recited function.  Rather, the corresponding structure only extends to an

7    algorithm clearly linked with the recited function.  *See Medtronic, Inc. v. Advanced*

8    *Cardiovascular Sys. Inc.*, 248 F.3d 1303, 1315 (Fed. Cir. 2001) (finding that structure capable of

9    performing the recited function is not sufficient to be corresponding structure in the absence of

10   "a clear link or association with the recited function").

11           The algorithm identified in the specification corresponds to Defendants' construction.

12   Specifically, the patents disclose "a content display system 203 according to the invention which

13   can be implemented, for example, using a digital computer that includes a display device and

14   that is programmed to perform the functions of the method 500."  ('652, 24:62-66)  The method

15   500 "provides a number of control options that enable the user to effect particular types of

16   control of the attention manager."  ('652, 25:5-7)  The flow chart disclosed in Figure 5 describes

17   the control options identified in the corresponding structure identified by Interval's expert.

18   ('652, Fig. 5)

19           While the specification suggests that additional control options could be used in addition

20   to those disclosed in Figure 5 ('652, 25:10-13), such a generic statement does not expand the

21   corresponding structure:  "A specification that merely mentions the possibility of alternative

22   structures without specifically identifying them is not sufficient to expand the scope of the claim

23   beyond the example used."  *Atmel Corp. v. Info. Storage Devices, Inc.*, 997 F. Supp. 1210, 1215

24   (N.D. Cal. 1998).  Thus, even if the Patents disclose other control options that could potentially

25   perform the recited function, if they are not disclosed as part of the algorithm, they are not

26   clearly linked to the recited function.  Accordingly, the  Court should reject Interval's effort to

27   contradict its own expert's testimony by expanding the allegedly "corresponding structure."

DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR PROPOSED
CLAIM CONSTRUCTIONS:
'652 AND '314 PATENTS - 2:10-cv-01385-MJP

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
(206) 626-6000

-39-

1    DATED this 9th day of October, 2012.

2                                        STOKES LAWRENCE, P.S.

3

4                                        By:  s/ Shannon M. Jost
                                              Shannon M. Jost (WSBA #32511)
5                                             Theresa Hsin-Yi Wang (WSBA #39784)

6                                        and

7                                             *Admitted Pro Hac Vice*
                                              Kevin X. McGann
8                                             Dimitrios T. Drivas
                                              Aaron Chase
9                                             WHITE & CASE LLP
                                              1155 Avenue of the Americas
10                                            New York, NY  10036-2787

11                                            Warren S. Heit
                                              Wendi R. Schepler
12                                            WHITE & CASE LLP
                                              3000 El Camino Real
13                                            Building 5, 9th Floor
                                              Palo Alto, CA  94306
14
                                         Attorneys for Defendant Google Inc.
15

16   /s/ Cortney S. Alexander *(with permission)*      Molly A. Terwilliger, WSBA No. 28449
     Gerald F. Ivey (*pro hac vice*)                   mollyt@summitlaw.com
17   gerald.ivey@finnegan.com                          SUMMIT LAW GROUP PLLC
     Robert L. Burns (*pro hac vice*)                  315 Fifth Avenue S., Suite 1000
18   robert.burns@finnegan.com                         Seattle, Washington  98104
     Elliot C. Cook (*pro hac vice*)                   Tel:  (206) 676-7000
19   elliot.cook@finnegan.com
     FINNEGAN, HENDERSON, FARABOW,
20   GARRETT & DUNNER, LLP
     901 New York Avenue, N.W.
21   Washington, D.C.  20001-4413
     Tel:  (202) 408-4000
22

23   Cortney S. Alexander (*pro hac vice*)
24   cortney.alexander@finnegan.com
     FINNEGAN, HENDERSON, FARABOW,
25   GARRETT & DUNNER, LLP
     3500 SunTrust Plaza
26   303 Peachtree Street, NE
27   Atlanta, Georgia  30308-3263

DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR PROPOSED
CLAIM CONSTRUCTIONS:
'652 AND '314 PATENTS - 2:10-cv-01385-MJP

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
(206) 626-6000

1   Tel:  (404) 653-6400
                            *Attorneys for Defendant AOL Inc.*
2

3   s/David S. Almeling (*with permission*)
    Brian M. Berliner (*pro hac vice*)              Scott T. Wilsdon, WSBA #20608
4   Neil L. Yang (*pro hac vice*)                   Jeremy E. Roller, WSBA #32021
    Xin-Yi Zhou                                     YARMUTH WILSDON CALFO PLLC
5   O'MELVENY & MYERS LLP                           818 Stewart Street, Suite 1400
    400 South Hope Street                           Seattle, WA  98101
6   Los Angeles, CA  90071                          Tel:  (206) 516-3800
7   Tel:  (213) 430-6000

8   George A. Riley (*pro hac vice*)
    David S. Almeling (*pro hac vice*)
9   O'MELVENY & MYERS LLP
    Two Embarcadero Center, 28th Floor
10  San Francisco, CA  94111
    Tel:  (415) 984-8700
11
                            *Attorneys for Defendant Apple Inc.*
12

13  s/Matthew I. Kreeger (*with permission*)
    Mark P. Walters (WSBA #30819)                   Michael A. Jacobs (*pro hac vice*)
14  Dario A. Machleidt (WSBA #41860)                Matthew I. Kreeger (*pro hac vice*)
    Gregory F. Wesner (WSBA #30241)                 Richard S.J. Hung (*pro hac vice*)
15  FROMMER LAWRENCE & HAUG LLP                     Francis Ho (*pro hac vice*)
    1191 Second Avenue                              Eric W. Ow (*pro hac vice*)
16  Seattle, WA  98101                              MORRISON & FOERSTER LLP
    (206) 336-5690                                  425 Market Street
17                                                  San Francisco, CA  94105
                                                    (415) 268-7000
18

19                          *Attorneys for Defendant Yahoo! Inc.*

20

21

22

23

24

25

26

27

DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR PROPOSED
CLAIM CONSTRUCTIONS:
'652 AND '314 PATENTS - 2:10-cv-01385-MJP

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
(206) 626-6000

1

## <u>CERTIFICATE OF SERVICE</u>

2

3   I hereby certify that on October 9, 2012, I caused the foregoing DEFENDANTS' OPENING
    BRIEF IN SUPPORT OF THEIR PROPOSED CLAIM CONSTRUCTIONS: '652 AND '314
4   PATENTS to be:

5   ☒   electronically filed with the Clerk of the Court using the CM/ECF system which will send
        notification of such filing to the following:

6

7   **Attorneys for Plaintiff Interval Licensing LLC**
    Justin A. Nelson (jnelson@susmangodfrey.com)
8   Eric J. Enger (eenger@hpcllp.com)
    Matthew R. Berry (mberry@susmangodfrey.com)
9   Max L. Tribble (mtribble@susmangodfrey.com)
    Michael F. Heim (mheim@hpcllp.com)
10  Nathan J. Davis (ndavis@hpcllp.com)
    Edgar G. Sargent (esargent@susmangodfrey.com)
11  Oleg Elkhunovich (oelkhunovich@susmangodfrey.com)
    Douglas R. Wilson (dwilson@hpcllp.com)
12  Niraj P. Patel (npatel@hpcllp.com)

13

14  **Attorneys for Yahoo!**
    Mark P. Walters (mwalters@flhlaw.com)
15  Dario A. Machleidt (dmachleidt@flhlaw.com)
    Francis Ho (fho@mofo.com)
16  Richard S. J. Hung (rhung@mofo.com)
    Michael Jacobs (mjacobs@mofo.com)
17  Matthew I. Kreeger (mkreeger@mofo.com)
    Eric W. Ow (eow@mofo.com)
18  Gregory F. Wesner (gwesner@flhlaw.com)

19  **Attorneys for Apple Inc.**
    Scott T. Wilsdon (wilsdon@yarmuth.com)
20  Jeremy E. Roller (jroller@yarmuth.com)
    David S. Almeling (dalmeling@omm.com)
21  George A. Riley (griley@omm.com)
    Brian M. Berliner (bberliner@omm.com)
22  Neil L. Yang (nyang@omm.com)
    Xin-Yi Zhou (vzhou@omm.com)

23

24  **Attorneys for AOL Inc.**
    Gerald F. Ivey (gerald.ivey@finnegan.com)
25  Cortney S. Alexander (cortney.alexander@finnegan.com)
    Eliot C. Cook (elliot.cook@finnegan.com)
26  Robert L. Burns (robert.burns@finnegan.com)
    Molly A. Terwilliger (mollyt@summitlaw.com)

27

DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR PROPOSED
CLAIM CONSTRUCTIONS:
'652 AND '314 PATENTS - 2:10-cv-01385-MJP

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
(206) 626-6000

1

2                                                s/ Shannon M. Jost
                                                 _____
3                                                Shannon M. Jost (WSBA #32511)
                                                 Stokes Lawrence, P.S.
4                                                1420 Fifth Avenue, Suite 3000
                                                 Seattle, WA  98101
5                                                (206) 626-6000
                                                 Fax:  (206) 464-1496
6                                                Shannon.jost@stokeslaw.com

7                                                Attorneys for Defendant Google Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR PROPOSED
CLAIM CONSTRUCTIONS:
'652 AND '314 PATENTS - 2:10-cv-01385-MJP