1

2

3

4

5

6

7

8
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
9
AT SEATTLE

10    INTERVAL LICENSING, LLC,                    LEAD CASE NO. C10-1385MJP

11                     Plaintiff,                 CLAIM CONSTRUCTION ORDER

12            v.

13    AOL, INC., et al.,

14                     Defendants.

15

16          This matter comes before the Court on the opening and responsive claim construction

17    briefs provided by the parties. (Dkt. Nos. 300, 301, 311, 315.) Having reviewed the briefs and all

18    related papers, and having held a tutorial hearing on December 10, 2012, and a <u>Markman</u> hearing

19    on December 12, 2012, the Court hereby enters the following ORDER:

20          The Court finds the terms "unobtrusive manner" and "does not distract a user" are

21    indefinite, and finds that the claims containing these terms are therefore invalid under 35 U.S.C.

22    § 112 ¶ 2. The Court adopts Plaintiff's proposed construction of disputed terms 2, 6, 7, 9, 10, 11,

23    12, 13, and 15. The Court adopts Defendants' proposed construction of disputed terms 3, 5, 8,

24    and 14.

**Background**

The two patents at issue in this litigation disclose an "attention manager for occupying the peripheral attention of a person in the vicinity of a display device." U.S. Patent No. 6,034,652 (the "'652 Patent"); U.S. Patent No. 6.788.314 (the "'314 Patent"). The '314 Patent is a continuation of the '652 Patent, and the two patents share a common specification. The inventions described in the two patents are aimed at providing information to users in non-distracting ways that do not interfere with the user's primary activity on a device such as a computer. (Dkt. No. 300 at 6.[1]) The inventions are intended to "improve users' ability to take advantage of available information by allowing for the flow of other sources of information that they otherwise would not see." (Id.)

Plaintiff Interval Licensing is the licensing arm of Interval Research Corporation, founded in 1992 by Paul Allen and David Liddle to perform advanced research and development in the areas of information systems, communications, and computer science. (Dkt. No. 153 at 4.) Interval Research was issued approximately 300 patents in less than a decade. (Id.) In the present litigation, Plaintiff brings suit against eleven Defendants: AOL, Inc.; Apple, Inc.; eBay, Inc.; Facebook, Inc.; Google, Inc.; Netflix, Inc.; Office Depot, Inc.; OfficeMax, Inc.; Staples, Inc.; Yahoo!, Inc.; and YouTube, LLC. (Id. at 2-4.) Plaintiff alleges Defendants are infringing four patents. (Id. at 5.) The Court has divided the litigation into two tracks, staying the track concerning U.S. Patent Nos. 6,263,507 and 6,757,682, but lifting the stay on the track concerning the '652 and '314 Patents. (Dkt. No. 269 at 2.) In this track, the parties have agreed to

---

[1] This litigation includes a number of related cases. The references here refer to docket numbers in the lead case, Case No. C10-1385MJP.

1   construction for eleven terms. (Dkt. No. 300 at 9.) The parties dispute the constructions of 13

2   remaining terms. (Id.)

3   **Discussion**

4      A.  Legal Standard

5         It is a "bedrock principle" of patent law that "the claims of a patent define the invention

6   to which the patentee is entitled to the right to exclude." Philips v. AWH Corp., 415 F.3d 1303,

7   1312 (Fed. Cir. 2005) (en banc) (citations omitted).  The words of a patent claim "are generally

8   given their ordinary and customary meaning." Vitriolics Corp. v. Conceptronic, Inc., 90 F.3d

9   1576 (Fed. Cir. 1996). The ordinary and customary meaning of a claim term is the meaning that

10  the term would have to a person of ordinary skill in the art in question at the time of the

11  invention. Phillips, 415 F.3d at 1313.

12        The Court has the sole responsibility for construing patent claims. See Markman v.

13  Westview Instruments, Inc., 517 U.S. 370 (1996). The Federal Circuit has established a clear

14  hierarchy of sources to guide courts in claim construction. First, if a claim term is non-technical

15  and derives no special meaning from the patent and its prosecution history, the court need not

16  construe it. See U.S. Surgical Corp. v. Ethicon, Inc., 103 F.3d 1554, 1568 (Fed. Cir. 1997).

17  However, if a jury might otherwise misunderstand a claim term in the context of the patent and

18  its file history, courts are to "read the claim term not only in the context of the particular claim in

19  which the disputed term appears, but in the context of the entire patent, including the

20  specification." Phillips, 415 F.3d at 1313. The Federal Circuit has affirmed that "the best source

21  for understanding a technical term is the specification from which it arose, informed, as needed,

22  by the prosecution history." Phillips, 415 F.3d at 1315.

23        Intrinsic evidence—the specification and prosecution history—is the primary source for

24  understanding claim terms. Phillips, 415 F.3d at 1315. Courts are also authorized to consider

CLAIM CONSTRUCTION ORDER- 3

1   "evidence external to the patent and prosecution history, including expert and inventor

2   testimony, dictionaries, and learned treatises." Id. However, "while extrinsic evidence can shed

3   useful light on the relevant art . . . it is less significant than the intrinsic record in determining the

4   legally operative meaning of claim language. Id. (internal quotations and citations omitted).

5        Disputed terms 5, 9, and 15 are means-plus-function limitations. Title 35 U.S.C. § 112

6   provides that "[a]n element in a claim for a combination may be expressed as a means or step for

7   performing a specified function without the recital of structure, material, or acts in support

8   thereof, and such claim shall be construed to cover the corresponding structure, material, or acts

9   described in the specification and equivalents thereof." 35 U.S.C. § 112 ¶ 6 (2000). Construing a

10  means-plus-function limitation is a two-step process. Asyst Techs., Inc. v. Empak, Inc., 268 F.3d

11  13644, 1369 (Fed. Cir. 2001). First, the court must "identify the function explicitly recited in the

12  claim." Id. Then the court must "identify the corresponding structure set forth in the written

13  description that performs the particular function set forth in the claim." Id. at 1369-70. The

14  identified structure must not include "structure from the written description beyond that

15  necessary to perform the claimed function." Micro Chem., Inc. v. Great Plains Chem. Co., Inc.,

16  194 F.3d 1250, 1258 (Fed. Cir. 1999).

17    B.  Indefiniteness

18       Defendants ask the Court to hold that two claim limitations that appear frequently in both

19  patents are insolubly ambiguous. (Dkt. No. 301 at 9-10.) This finding would render invalid all

20  the claims of the '314 Patent and claims 4-8, 11, 34, and 35 of the '652 Patent. (Id.) The two

21  limitations are: (1) that images be displayed in an "unobtrusive manner" and (2) that the display

22  of images must not "distract a user" from the user's primary interaction with the apparatus. (Id.);

23  '652 Patent, Claims 4-8, 11, 34, 35; '314 Patent, All Claims. Defendants assert, "[w]hether

24  treated separately or together, these claim limitations fail to define a definite invention at least

1  because whether an image is displayed in an 'unobtrusive manner' or 'does not distract a user'

2  depends on the subjective opinion of each individual user and on the surrounding environment in

3  which the image is displayed." (Dkt. No. 301 at 10.) Therefore, Defendants assert, the Patents do

4  not tell one of ordinary skill in the art what constitutes displaying an image in an "unobtrusive

5  manner" and what "does not distract a user." (Dkt. No. 301 at 10.)

6      Every patent's specification must "conclude with one or more claims particularly

7  pointing out and distinctly claiming the subject matter which the applicant regards as his

8  invention." 35 U.S.C. § 112 ¶ 2 (2000); see Halliburton Energy Servs., Inc. v. M-1 LLC, 514

9  F.3d 1244, 1249 (Fed. Cir. 2008). "Because the claims perform the fundamental function of

10  delineating the scope of the invention, the purpose of the definiteness requirement is to ensure

11  that the claims delineate the scope of the invention using language that adequately notifies the

12  public of the patentee's right to exclude." Datamize, LLC v. Plumtree Software, Inc., 417 F.3d

13  1342, 1347 (Fed. Cir. 2005) (citations omitted). "Even if a claim term's definition can be

14  reduced to words, the claim is still indefinite if a person of ordinary skill in the art cannot

15  translate the definition into meaningfully precise claim scope." Halliburton, 514 F.3d at 1251.

16  Patent claims with clear boundaries are "essential to promote progress, because [they] enable[]

17  efficient investment in innovation." Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 535

18  U.S. 722, 730-31 (2002). This issue is properly raised during the Markman hearing because an

19  analysis of claim indefiniteness under § 112 ¶ 2 is "inextricably intertwined with claim

20  construction." Atmel Corp. v. Information Storage Devices, Inc., 198 F.3d 1374, 1379 (Fed. Cir.

21  1999); see also Oakley, Inc. v. Sunglass Hut Int'l, 316 F.3d 1331, 1340-41 (Fed. Cir. 2003)

22  (determination of claim definiteness "requires a construction of the claims according to the

23  familiar cannons of claim construction.").

24

1        Defendants have a heavy burden to prove indefiniteness. The statutory presumption of

2 patent validity means that "close cases of indefiniteness in litigation involving issued patents are

3 properly resolved in favor of the patentee." Exxon Research & Eng'g Co. v. United States, 265

4 F.3d 1371, 1380 (Fed. Cir. 2001). A claim is not indefinite "merely because it poses a difficult

5 issue of claim construction." Id. at 1375. "Only after a thorough attempt to understand the

6 meaning of a claim has failed to resolve material ambiguities can one conclude that the claim is

7 invalid for indefiniteness. Foremost among the tools of claim construction is of course the claim

8 language itself, but other portions of the intrinsic evidence are clearly relevant, including the

9 patent specification and prosecution history." All Dental Prodx, LLC v. Advantage Dental

10 Prods., Inc., 309 F.3d 774, 780 (Fed. Cir. 2002).

11        Using the ordinary tools of claim construction, the Court finds that the terms "in an

12 unobtrusive manner" and "does not distract" a user, whether used together or separately, are

13 insolubly ambiguous. See '652 Patent, Claims 4-8, 11, 34, 35; '314 Patent, All Claims.  The

14 intrinsic record provides no basis for a person of ordinary skill in the art to determine whether a

15 displayed image is displayed in an "unobtrusive manner." (Id.) The Federal Circuit addressed a

16 similar situation in Datamize, where it held that a claim directed to an electronic kiosk system

17 with an "aesthetically pleasing" user interface was invalid as indefinite because neither the claim

18 language nor the specification provided an "objective standard . . . in order to allow the public to

19 determine the scope" of the term. 417 F.3d at 1350. The Datamize court found that the patentee

20 "offered no objective definition identifying a standard for determining when an interface screen

21 is 'aesthetically pleasing.'" Id. Likewise, the claims of the '652 and '314 Patents provide no

22 meaningful definition of the phrase "unobtrusive manner," because the same image may or may

23

24

1  not be considered unobtrusive depending on a variety of factors, such as color, size, and

2  information displayed. (See Dkt. No. 301 at 14.)

3         Similarly, the limitation that a displayed image "does not distract" a user is indefinite

4  because whether something distracts a user from his primary interaction depends on the

5  preferences of the particular user and the circumstances under which any single user interacts

6  with the display. See Halliburton, 514 F.3d at 1255 ("When a proposed construction requires that

7  an artisan make a separate infringement determination for every set of circumstances in which

8  the composition may be used, and such determinations are likely to result in differing outcomes

9  (sometimes infringing and sometimes not), that construction is likely to be indefinite."). As

10 Defendants explain, one user with a higher ability to focus may not be distracted by an image,

11 while another user with a lesser ability to concentrate may be easily pulled away by the same

12 image. (Dkt. No. 301 at 17.) "While patentees are allowed to claim their inventions broadly, they

13 must do so in a way that distinctly identifies the boundaries of their claims." Halliburton, 514

14 F.3d at 1253.

15        The Patents' specification also fails to provide guidance. Plaintiff points to various

16 passages in the specification that purport to define the terms "unobtrusive manner" and "does not

17 distract the user." (Dkt. No. 311 at 7-8.) Despite Plaintiff's insistence, none of these sections

18 show one of ordinary skill in the art how to distinguish between displays of content that are

19 obtrusive/unobtrusive and distracting/non-distracting.  Plaintiff points to Column 6, lines 37-51

20 of the specification of the '652 Patent, which discusses an embodiment where "the information is

21 presented by the attention manager during active periods . . . in an unobtrusive manner that does

22 not distract the user from the primary interaction (e.g., the information is presented in areas of a

23 display screen that are not used by displayed information association with the primary

24

1    interaction)." '652 Patent at 6:39-45. During the <u>Markman</u> hearing, Plaintiff focused on the

2    parenthetical in lines 43-45, arguing that this provided an express definition of the terms.

3    However, while a patent's specification may act as a dictionary, a dictionary only works if it is

4    comprehensible. <u>See</u> <u>Silicon Graphics, Inc. v. ATI Techs., Inc.</u>, 607 F.3d 784, 789 (Fed Cir.

5    2010) ("If the specification reveals a special definition for a claim term, 'the inventor's

6    lexicography governs'" (quoting <u>Phillips</u>, 415 F.3d at 1316)). Here there is simply no way that a

7    person of ordinary skill in the art would know that this phrase, starting with "e.g.," constitutes an

8    express definition. '652 Patent at 6:39-45.

9          The next passage, which explains that an attention manager "generally" makes use of

10   "unused capacity," including both "spatial" and "temporal" dimensions, also provides little

11   guidance to one of ordinary skill in the art trying to understand the terms. '652 Patent at 6:45-

12   51; <u>see</u> <u>Datamize</u>, 417 F.3d at 1352 ("while the description of an embodiment provides examples

13   of aesthetic features of screen displays that can be controlled by the authoring system, it does not

14   explain what selection of these features would be 'aesthetically pleasing.'"). Neither do examples

15   of specific embodiments. In <u>Datamize</u>, the patentee provided examples of features that were

16   "aesthetically pleasing," such as "some aspect of button styles and sizes, window borders, color

17   combinations, and type fonts," but the Federal Circuit held that the term was still indefinite

18   because "the specification does not explain what factors a person should consider when selecting

19   a feature to include in the authoring system." <u>Id.</u> Here, Plaintiff points the Court to an

20   embodiment that uses the "unused spatial capacity" of the display screen, or is "presented in

21   areas of a display screen that are not used by displayed information associated with the primary

22   interaction." (Dkt. No. 311 at 7); '652 Patent at 6:37-51; 2:17-19. As in <u>Datamize</u>, these

23   descriptions are unhelpful because they do not explain what factors a person should consider

24

1   when selecting a feature to include. 417 F.3d at 1352. In fact, rather than providing any objective

2   guidance, the examples cited by Plaintiff simply refer back in general terms to the "wallpaper" or

3   "screensaver" embodiments. They do not provide a way for a person of ordinary skill in the art to

4   translate the definition into meaningfully precise claim scope. See Halliburton, 514 F.3d at 1251.

5          The prosecution history also fails to set forth an objective method to determine whether a

6   displayed item is "unobtrusive" or would "not distract" a user. Plaintiff argues that although the

7   PTO raised possible indefiniteness issues for other terms, it "never raised any issue with respect

8   to the 'unobtrusive manner' phrase." (Dkt. No. 311 at 8.) Plaintiff also cites to the prosecution

9   history of the '652 patent, where the PTO linked "display[ing] content data in an unobtrusive

10  manner" with the "wallpaper embodiment and display area embodiment." (Dkt. No. 327-1 at

11  107.) None of this provides guidance as to any "physical characteristics that guide the

12  determination" of whether a display is unobtrusive or distracting. See Deere & Co. v. Bush Hog,

13  LLC, No. 2011-1629, -1630, -1631, slip op. at 17 (Fed. Cir. Dec. 4, 2012.) Lastly, Plaintiff cites

14  to various examples where Defendants have used the term "unobtrusive" in their own patents.

15  (Id.) However, Defendants point out that most of those patents do not use the term "unobtrusive"

16  in a claim, and, even if they do, their specifications may contain sufficient guidance. In sum,

17  Plaintiff fails to show that the extrinsic record provides any clarity regarding the meaning of

18  these two terms.

19         The limitations "unobtrusive manner" and "does not distract a user" are indefinite

20  because the patents fail to provide an objective standard by which to define the scope of these

21  terms. See Datamize, 417 F.3d at 1350.  They are also indefinite because the determination of

22  whether an accused product would meet the claim limitations depends on its usage in changing

23

24

1   circumstances. <u>See</u> <u>Halliburton</u>, 514 F.3d at 1254-55.  Therefore, the Court finds that the claims

2   containing these terms are invalid for indefiniteness under 35 U.S.C. § 112 ¶ 2.

3       C.   <u>Terms for Construction</u>

4       **1.   "selectively displaying on the display device . . . an image or images generated from
            the set of content data"**

5
6       The Court adopts the parties' agreed construction of term 1: "[choose/choosing] and

7   display[ing] one or more "images generated from the set of content data" according to

8   scheduling information. (Dkt. No. 334.)

9       **2.   "images generated from a set of content data"**

| PLAINTIFF'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| Audio and/or visual output that is generated from data within a set of content data | Audio and/or visual output defined by a content provider that is generated from data within a set of related data |

13      The Court adopts Plaintiff's proposed construction: "audio and/or visual output that is

14  generated from data without a set of content data."

15      The only dispute between the parties with respect to this term is whether the audio and/or

16  visual output must be "defined by the content provider," as Defendants propose. (Dkt. No. 301 at

17  21.) Defendants argue that their construction specifies, "consistent with the intrinsic record and

18  the very purpose of the invention, that the audio and/or visual output is defined by the content

19  provider." (<u>Id.</u>) This proposed construction goes too far. While the abstract of the '652 Patent

20  states that the attention manager "affords an opportunity to content providers to disseminate their

21  information," the Patent nowhere says that the output is "defined" by the content provider. '652

22  Patent, Abstract.

23

24

1    Defendants' proposed construction also fails because it conflicts with the definitions of

2    "image" and "content data" in the specification. (Dkt. No. 300 at 12.) The specification defines

3    "image" as "any sensory stimulus that is produced from the set of content data" and defines

4    "content data" as "data that is used by the attention manager to generate displays." '652 Patent at

5    6:60-64; 9:51-54. The idea that output must be defined by a content provider does not appear in

6    the specification. "If the specification reveals a special definition for a claim term, 'the inventor's

7    lexicography governs,'" Silicon Graphics, Inc. v. ATI Techs., Inc., 607 F.3d 784, 789 (Fed Cir.

8    2010) (quoting Phillips, 415 F.3d at 1316.). Therefore, the Court adopts Plaintiff's proposed

9    construction.

10   **3. "in an unobtrusive manner that does not distract a user of the apparatus from a primary interaction with the apparatus"**

| PLAINTIFF'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
| --- | --- |
| During a user's primary interaction with the apparatus and unobtrusively such that the images generated from the set of content data are displayed in addition to the display of images resulting from the user's primary interaction<br><br>**Alternate Construction: During a user's primary interaction with the apparatus and the information is presented in an area of the display screen not substantially used by displayed information associated with the primary interaction of the user** | As written, this term is inherently subjective and therefore indefinite.<br><br>Alternately, this must be limited such that the images are displayed either when the attention manager [or system] detects that the user is not engaged in a primary interaction or as a background of the computer screen. |

19

20   As explained in Section B, these terms are indefinite. Courts cannot rewrite claims to

21   preserve their validity. Rhine v. Casio, Inc., 183 F.3d 1342, 1345 (Fed Cir. 1999); see also

22   Becton, Dickinson & Co. v. C.R. Bard, Inc., 922 F.2d 792, 799 n.6 (Fed. Cir. 1990) ("Nothing in

23   any precedent permits judicial redrafting of claims."). "While patentees are allowed to claim

24

their inventions broadly, they must do so in a way that distinctly identifies the boundaries of their

claims." <u>Halliburton</u>, 514 F.3d at 1253.

Plaintiff's argument against a finding of indefiniteness highlights the flaws in these

terms. Plaintiff asserts that the following passage from the specification provides a clear,

objective definition of "unobtrusive manner":

> According to another further aspect of the invention, the selective display of an image or images *occurs while the user is engaged in a primary interaction with the apparatus, which primary interaction can result in the display of an image or images in addition to the image or images generated from the set of content data* ("the wallpaper embodiment") (emphasis added in Plaintiff's brief). '652 Patent at 3:25-31; (Dkt. No. 300 at 18-19.)

But this purported "clear, objective definition" sheds no light on what "unobtrusive manner"

means. Are all manifestations of the screensaver embodiment considered "unobtrusive"? What

color, shape, or size makes an image more or less "unobtrusive"? Which unused areas of the

display screen are unobtrusive? The "definition" cited by Plaintiff addresses none of these

questions. <u>See</u> <u>Datamize</u>, 417 F.3d at 1351 ("when faced with a purely subjective phrase . . . a

court must determine whether the patent's specification supplies some standard for measuring

the scope of the phrase.").

As Defendants point out, this purported "clear, objective definition" fails to even mention

the word "unobtrusive." (Dkt. No. 315 at 12.) Further, the passage states that the primary

interaction "can result" in the display of images, not that it "must result" or even that it "results."

(<u>Id.</u>) The words "can result" indicate that the primary interaction sometimes, but not always,

results in the display. (<u>Id.</u>) Plaintiff's argument that the patentee acted as its own lexicographer is

unpersuasive. A comparison with <u>Phillips</u> is illustrative. 415 F.3d at 1325. In <u>Phillips</u>, the

Federal Circuit relied on passages in the asserted patent's specification that specifically discussed

1  "baffles" to construe the term "baffles." Id. Here, Plaintiff is unable to point to any such

2  language discussing a specific meaning for "unobtrusive."

3     Plaintiff's proposed construction also incorrectly excludes the screen saver embodiment

4  described in the Patents. Column 6, lines 45-51 of the '652 Patent specification states,

5  "Generally, then, an attention manager according to the invention makes use of 'unused

6  capacity' of a display device, 'unused capacity' being defined broadly to include, for example,

7  the embodiments mentioned above, i.e., both *temporal* (e.g., the first-described embodiment

8  above) and spatial (e.g., the second-described embodiment above) dimensions" (emphasis

9  added). '652 Patent, 6:45-51. This explanation, coming directly after Plaintiff's proposed

10  definition of "unobtrusive," does not distinguish between the "temporal" embodiment and the

11  "spatial" embodiment. (Dkt. No. 300 at 18-19.) Plaintiff's references to the prosecution history

12  are unpersuasive because, to the extent the PTO identifies "unobtrusive" with the "wallpaper

13  embodiment," this conflicts with the language of the specification, which does not distinguish

14  between the screensaver embodiment and the wallpaper embodiment. See SRAM Corp. v. AD-II

15  Eng'g, Inc., 465 F.3d 1351, 1359 (Fed. Cir. 2006).

16     Finally, Plaintiff's last-minute amendment, presented to the Court as an "alternative

17  compromise construction" that Defendants rejected, still does not solve the indefiniteness

18  problem. (Dkt. No. 334.) Plaintiff suggests construing the term to mean "during a user's primary

19  interaction with the apparatus and **the information is presented in an area of the display**

20  **screen not substantially used by displayed information associated with the primary**

21  **interaction of the user**" (emphasis indicates amendment). (Id. at 3.) First, this construction

22  reads out the words "does not distract" from the term, while introducing the word

23  "substantially." Second, the proposed construction, specifying that the information must be

24

presented in an areas "not substantially used" is still indefinite, because it is not supported in the

specification and because one of ordinary skill in the art has no way of knowing what

"substantial" means in this context. Rather than providing clarification for the Court, Plaintiff's

inability to settle on a construction further undermines its argument that the specification acted as

a dictionary regarding this term.

**4. "primary interaction"**

During the <u>Markman</u> hearing, the parties agreed to adopt the definition of this term in

Column 8, lines 19-23 of the '652 Patent. Therefore, the Court construes "primary interaction" as

"any operation of the computer that occurs to enable or to support the performance of the

function or functions that provide the basis for the user's use of the computer."

**5. "means for selectively displaying on the display device, in an unobtrusive manner that does not distract a user of the apparatus from a primary interaction with the apparatus, an image or images generated from the set of content data"**

| PLAINTIFF'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
| --- | --- |
| **Function:** Selectively displaying an image or images generated from the set of content data on the display device in an unobtrusive manner that does not distract a user of the apparatus from a primary interaction with the apparatus<br><br>**Structure:** One or more digital computers programmed to identify the next set of content data in the schedule and display the next set of content data in the schedule in an "unobtrusive manner that does not distract a user of the apparatus from a primary interaction with the apparatus" | As set forth above, this term includes a phrase that is indefinite within the recited function; thus this term is indefinite.<br><br>**Function:** "selectively displaying on the display device in an unobtrusive manner that does not distract a user of the apparatus from a primary interaction with the apparatus, an image or images generated from the set of content data" [as construed herein[<br><br>To the extent there is any structure disclosed that could fulfill the recited function, it is:<br><br>**Structure:** A conventional digital computer programmed with a screen saver application program, activated by the detection of an idle period, or a wallpaper application program, that "selectively displays . . . image or images generated from the set of content data" [as |

construed herein]

As explained in Section B, this term includes a phrase that is indefinite within the recited function; therefore this term is indefinite.

The parties agree that the recited function includes displaying images "in an unobtrusive manner that does not distract a user of the apparatus from a primary interaction." (Dkt. No. 315 at 15-16.) However, the parties dispute what, if any, structure is disclosed in the specification for performing the function recited in the claim. (Dkt. No. 301 at 29; Dkt. No. 300 at 22-24.)  The Federal Circuit has observed that "[i]n a means-plus-function claim in which the disclosed structure is a computer, or microprocessor, programmed to carry out an algorithm, the disclosed structure is not the general purpose computer, but rather the special purpose computer programmed to perform the disclosed algorithm." WMS Gaming, Inc. v. Int'l Game Tech., 184 F.3d 1339, 1349 (Fed. Cir. 1999). "The corresponding structure for a § 112 ¶ 6 claim for a computer-implemented function is the algorithm disclosed in the specification." Aristocrat Techs. Austl. PTY Ltd. v. Int'l Game. Tech., 521 F.3d 1328, 1333 (Fed. Cir. 2008).

Here, Plaintiff fails to identify anything in the specification that describes the steps the software would perform or the "algorithm" used to implement the recited function for the "means for displaying" term. (Dkt. No. 315 at 16.) While a "description of the function in words may disclose, at least to the satisfaction of one of ordinary skill in the art, enough of an algorithm to provide the necessary structure under § 112 ¶ 6," the description Plaintiff provides here is insufficient. See Typhoon Touch. Techs., Inc. v. Dell, Inc., 659 F.3d 1376, 1384 (Fed. Cir. 2011). Plaintiff points to Fig. 5A in the specification, which says the digital computer must select the content to be displayed. (Dkt. No. 311 at 14.) Then, Plaintiff explains, "the image or images generated from that set of content data must be displayed 'in an unobtrusive manner'." (Id.,

citing step 105 of Fig. 5A). Then, according to Plaintiff, the images must be displayed "during a user's primary interaction with the apparatus and unobtrusively such that the images generated from the set of content data are displayed in addition to the display of images resulting from the user's primary interaction." (Id., quoting '652 patent at 3:25-30.) Rather than describing the function, Plaintiff merely parrots the indefinite functional language in the claims and fails to identify any algorithm that is actually capable of accomplishing the function. As Defendants explain, "[s]uch a construction would capture any general purpose computer programmed to perform the recited function regardless of whether it corresponds to any algorithm in the specification." (Dkt. No. 301 at 29-30.) Therefore, the Court finds claim 4 of the '652 Patent and its dependent claims are invalid as indefinite for lacking sufficient disclosure of supporting structure.

**6. "each content provider provides its content data to [a/the] content display system independently of each other content provider"**

| PLAINTIFF'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
| --- | --- |
| No construction needed; in the alternative: each content provider provides its content data to the content display system without being influenced or controlled by any other content provider | Each content provider transmits its content data to [a/the] content display system without being transmitted through, by or under the influence or control of any other content provider |

The Court adopts Plaintiff's construction and declines to construe this term.

The only dispute regarding this term concerns whether the word "independently" needs to be construed at all. (Dkt. No. 300 at 42; Dkt. No. 301 at 30.) It does not. Defendants explain that their construction clarifies that "a content provider does NOT provide its content data 'independently' if one content provider's data is provided 'through, by or under the influence or control of any other content provider.'" (Dkt. No. 301 at 30 (emphasis in original).) If a claim

term is non-technical and derives no special meaning from the patent and its prosecution history, the court need not construe it. See U.S. Surgical Corp., 103 F.3d at 1568. That is the case here.

The prosecution history confirms Plaintiff's assertion that the term need not be construed. During the original prosecution the patentee expressly removed the requirement of "direct" transmission from the content provider to the content display system as part of the amendment in which the language of this disputed term was added. (Dkt. No. 300 at 25, citing '314 Patent History, IL_DEFTS0006293.) As part of this amendment, the "directly to the display device" language was removed from the claims, while the language disputed here was added.  (Id.) Defendants' proposed construction improperly reintroduces a requirement of "direct" transmission that was expressly removed during prosecution.

**7. "user interface installation instructions for enabling provision of a user interface that allows a person to request the set of content data from the specified information source"**

| PLAINTIFF'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| "installation instructions" for enabling provision of an interface that enables a person to request the set of content data from a specific source of information | "instructions" that enable content providers to install a user interface in the content provider's information environment so that users can request a particular set of content data representing the image(s) to be displayed from the specified content provider |

The Court adopts Plaintiff's construction: "'installation instructions' for enabling provision of an interface that enables a person to request the set of content data from a specific source of information."

Defendants ask the Court to require that the user interface be "in the content provider's information environment," as outlined in the specification of the '652 Patent at Col. 16:9-16. (Dkt. No. 301 at 32.) But adopting this construction would import a limitation from a preferred

1   embodiment in contravention of Federal Circuit precedent. See Phillips, 415 F.3d at 1323

2   ("[A]lthough the specification often describes very specific embodiments of the invention, we

3   have repeatedly warned against confining the claims to those embodiments."). In fact, the

4   specification of the '652 Patent explains that "[a]ny appropriate user interface can be used for

5   enabling a user to directly request a particular set of content data." '652 Patent at 18:60-61. This

6   contravenes Defendants' construction. Id.

7       Defendants also attempt to limit the claim by requiring that the user interface permit a

8   user to request "a particular set of content data representing the image(s) to be displayed from the

9   specified content provider." (Dkt. No. 301 at 32.) Again, Defendants' attempt to insert a

10  requirement that every content provider take an active role in "defining" or "formulating" the

11  content data or the images generated is an improper attempt to import a limitation from a

12  preferred embodiment. (Dkt. No. 300 at 27.) This language is not supported by the claims and

13  would only serve to add uncertainty about what the claims require.

14      **8.  "during operation of an attention manager"**

| PLAINTIFF'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
| --- | --- |
| During the operation of a system for engaging at least part of the user's attention that is not occupied by the user's primary interaction with the apparatus | During operation of a system that displays images to a user either when the program detects that the user is not engaged in a primary interaction or as a background of the computer screen |

19

20      The Court adopts Defendants' construction: "During operation of a system that displays

21  images to a user either when the program detects that the user is not engaged in a primary

22  interaction or as a background of the computer screen."

23      Plaintiff's construction, relying on the discussion of "attention manager" in the Abstract

24  of the '652 Patent, would result in a construction that provides no meaningful boundaries for the

1  term. Contrary to Plaintiff's assertion, the specification does not define the term "attention

2  manager"; it simply uses the term as the title of its invention. (Dkt. No. 301 at 33.) The Court

3  construes the term according to the only description in the specification that gives objective

4  boundaries to the scope of this limitation: the "screensaver" and "wallpaper" embodiments. (Dkt.

5  No. 301 at 33.)

6       The prosecution history also confirms that "attention manager" should be construed

7  according to the screensaver and wallpaper embodiments. During prosecution, the examiner

8  rejected the '652 Patent over U.S. Patent No. 5,572,643 (the "Judson Patent"), which teaches a

9  method for displaying messages to a computer user in an internet browser while the user is

10  waiting for the webpage to load. (Dkt. No. 301 at 34, citing JPHS Ex. C1 at

11  IL_DEFTS0007928.) In distinguishing its invention from the Judson Patent, applicants argued

12  that "the instant invention uses a different unused capacity than that used by the method taught

13  by Judson." (Id.) Applicants explained that their invention made use of the "unused capacity" of

14  a display device and of the attention of a person in the vicinity of the display device through two

15  implementations, the screensaver and the wallpaper embodiments. (Id.) Having relied on the

16  specification's description of both the screensaver and wallpaper embodiments to distinguish the

17  purported invention from prior art, Plaintiff cannot now expand the scope of the invention during

18  litigation. See CVI/Beta Ventures v. Tura LP, 112 F.3d 1146, 1158 (Fed. Cir. 1997) ("through

19  statements made during prosecution or reexamination an applicant . . . may commit to a

20  particular meaning for the patent term, which meaning is then binding in litigation").

21       The Court reads the claim term "in the context of the entire patent, including the

22  specification." Phillips, 415 F.3d at 1313. Defendants' proposed construction is the only one that

23

24

CLAIM CONSTRUCTION ORDER- 19

1 gives objective meaning to the term "attention manager" and is consistent with the specification

2 and the prosecution history.

3    **9. "means for acquiring a set of content data from a content providing system"**

| PLAINTIFF'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| **Function:** acquiring a set of content data from a content providing system<br><br>**Structure:** A digital computer capable of communicating with a content providing system via a network and programmed to perform at least the following steps: (1) providing a user with an interface to directly request a particular set of content data, (2) indicating to the content provider the particular set of content data requested by the user, and (3) obtaining the particular set(s) of content data requested by the user at the content display system | **Function:** acquiring a set of content data from a content providing system<br><br>**Structure:** A digital computer connected to a content providing system via a network and programmed to perform the steps: (1) providing a user with an interface to directly request a particular set of content data, (2) indicating to the content provider the particular set of content data requested by the user, (3) receiving a set of instructions at the content display system that identify the site from which the set of content data is to be acquiring, (4) downloading the particular set(s) of content data requested by the user at the content display system |

14      The Court adopts Plaintiff's construction of this means-plus-function term.

15      The parties agree on the function of this term. (Dkt. No. 300 at 28; Dkt. No. 301 at 36.)

16 However, the parties' proposed constructions raise three disputes concerning the corresponding

17 structure: (1) whether the digital computer must be "connected to a content providing system via

18 a network" as an independent limitation; (2) whether the corresponding structure must be

19 programmed for "receiving a set of instructions at the content display system that identify the

20 site from which the set of content data is to be acquired"; and (3) whether the content data must

21 be "downloaded," rather than simply "obtained." (Dkt. No. 300 at 29.) The answer to each

22 question is no.

1  Defendants' proposed requirement that the digital computer be connected to the content

2  providing system "via a network" goes beyond the language of the specification, which explains,

3  "[a]ny appropriate user interface can be used for enabling a user to directly request a particular

4  set of content data." '652 Patent at 18:60-61. Defendants' proposed construction also improperly

5  suggests that a connection must be maintained at all times, while the recited steps only require

6  requesting and obtaining the content data. (Dkt. No. 300 at 29.) As Plaintiff explains, the user

7  interface could be presented to the user before a connection with the content provider is

8  established, but this would not fall within Defendants' proposed construction. (Id.) See Micro

9  Chem., 194 F.3d at 1258 ("Nor does the statute permit incorporation of structure from the written

10  description beyond that necessary to perform the claimed function.").

11  Defendants' proposed construction also improperly includes the step of "receiving a set

12  of instructions at the content display system that identify the site from which the set of content

13  data is to be acquired." (Dkt. No. 300 at 30.) The fact that this step is not necessary to perform

14  the function is demonstrated by its omission from Figure 4, which describes a "method . . . for

15  acquiring and updating sets of content data." '652 Patent at Fig. 4. Defendants assert that

16  "acquisition instructions 331" are necessary to perform the claimed function." (Dkt. No. 301 at

17  36.) But the specification teaches that "acquisition instructions 331" are obtained after a set of

18  content data has been acquired by the content display system. '652 Patent at 20:62-65. Because it

19  is not necessary to perform the recited function, Defendants' step (3) will not be incorporated in

20  the structure for this term.

21  Finally, Defendants' proposed use of the term "downloading' rather than "obtaining" is

22  unnecessary and goes against the usage in the specification. (Dkt. No. 300 at 30.) If a claim term

23  is non-technical and derives no special meaning from the patent and its prosecution history, the

24

court need not construe it. See U.S. Surgical Corp., 103 F.3d at 1568. The specification provides

no reason to replace these easily understandable words with "downloading," a term that does not

appear in the specification. (Dkt. No. 300 at 31.) Defendants object that "a jury may interpret

'obtaining' to include an embodiment where content data was acquired through local sources,"

which was expressly disclaimed. (Dkt. No. 315 at 21.) Defendants provide no evidence that the

word "downloading" is any less susceptible to misinterpretation than the word "obtaining."

Plaintiff's construction is more reasonable.

### 10. "content provider"

| PLAINTIFF'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| No construction necessary; in the alternative: a system that provides one or more "sets of content data" | An entity that formulates one or more "sets of content data" |

The Court finds that no construction is necessary of this term because it is non-technical

and has no special meaning in the context of the patent. See U.S. Surgical Corp. v. Ethicon, Inc.,

103 F.3d 1554, 1568 (Fed. Cir. 1997).

Defendants' proposed construction inappropriately limits the claim term to require that

the content provider "formulate" the content, rather than simply "provide" it. (Dkt. No. 300 at

31, Dkt. No. 301 at 38.) See Phillips, 415 F.3d at 1323 ("[A]lthough the specification often

describes very specific embodiments of the invention, we have repeatedly warned against

confining the claims to those embodiments.) While Defendants are able to point to a few

instances where the word "formulate" is used, it is not used universally. Cf. '314 Patent,

Abstract; '314 Patent 31:48-49, 31:52-53. 31:58-59. In fact, while the Abstract of the '314 Patent

says that "[e]ach set of content data is formulated by a content provider," it nowhere says that

1  every content provider must "formulate," rather than "provide," the sets of content data. '314

2  Patent Abstract.

3      **11.  "content data scheduling instructions for providing temporal constraints on the
        display of the image or images generated from the set of content data"**

4

| PLAINTIFF'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| "instructions" that affect the duration, order, timing, and/or frequency of the display of the "image or images generated from the set of content data" | instructions that can be tailored by a content provider that specify the time(s) at which image(s) generated from a set of content data may be displayed |

5

6

7

8          The Court adopts Plaintiff's construction: "'instructions' that affect the duration, order,

9  timing, and/or frequency of the display of the 'image or images generated from the set of content

10  data.'"

11         The parties have two disagreements regarding this term: (1) whether "temporal" is

12  limited to "timing," or also includes duration, order and frequency; and (2) whether the limitation

13  requires that all content data scheduling instructions must always be capable of being "tailored

14  by a content provider." (Dkt. No. 300 at 33; Dkt. No. 301 at 39.) Plaintiff's construction is the

15  more reasonable one.

16         The specification clarifies that "content data scheduling instructions for providing

17  temporal constraints" includes not only timing, but also duration, order, and frequency. (Dkt. No.

18  300 at 33.) In relevant part, specification states:

19

20         The content data scheduling instructions can specify, for example, the duration of time
           that the image or images generated from a set of content data can be displayed, an order
           in which the images generated from a plurality of sets of content data are displayed, a
21         time or times at which the image or images generated from a set of content data can or
           cannot be displayed, and/or constraint on the number of times that the image or images
22         generated from a set of content data can be displayed. '652 Patent at 4:31-55.

23

24

1   Some confusion results because a prior sentence, lines 4:37-39, discusses "content data

2   scheduling instructions for providing temporal constraints," while the later section discusses

3   "content data scheduling instructions." '652 Patent at 4:47-55. However, the context of the

4   specification shows that the use of "temporal" in Column 4, line 38, was not meant to limit the

5   term "content data scheduling instructions" to only what the specification refers to as "timing

6   instructions"—the third example of the specification's explanation of "content data scheduling

7   instructions" at Column 4, lines 47-55. Id. Defendants' proposed construction is too narrow

8   because it would exclude other types of content data scheduling instructions expressly taught by

9   the specification, including duration instructions, sequencing instructions, and saturation

10   instructions. See '652 Patent at 4:47-55; 16:65-17:28.

11        Defendants' proposal to limit this term to instructions that "can be tailored by a content

12   provider" also incorrectly imports a characteristic from a certain embodiment into the claim. See

13   Phillips, 415 F.3d at 1323. The plain language of this limitation does not require that all content

14   data scheduling instructions must always be capable of being "tailored by a content provider."

15   (Dkt. No. 311 at 21.) While the specification discusses an embodiment where tailoring occurs

16   before the instructions are sent to the content display system, nowhere does it state that the

17   instructions must always be tailored. See '652 Patent at 17:49-57; (Dkt. No. 300 at 34-35).

18   Plaintiff's proposed construction, which tracks the claim language while clarifying the meaning

19   of "temporal" according to the specification, is the better construction.

20        **12. "content data update instructions for enabling acquisition of an updated set of**
21        **content data from an information source that corresponds to a previously acquired**
             **set of content data"**

22

| PLAINTIFF'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| 23   "instructions" that specify when to obtain an updated version of a set of content data and the | "instructions" that can be tailored by the content provider when to obtain an updated |

24

| location from which to obtain such updated version | version of a previously acquired set of content data and the location from which to obtain such updated version |
|---|---|

The Court adopts Plaintiff's construction: "'instructions' that specify when to obtain an updated version of a set of content data and the location from which to obtain such updated version."

The parties' only dispute with respect to this term is whether the claimed instructions are limited to those that "can be tailored by the content provider." (Dkt. No. 300 at 35; Dkt. No. 301 at 42.) For the same reasons discussed in term 11 with respect to content data scheduling instructions, this additional limitation is improper. In opposition, Defendants cite to the summary of the invention, which states that "the attention manager allows content providers to tailor particular aspects of the attention manager as desired by the content provider, such as the acquisition of updated sets of the content provider's content data (E.g., the frequency of such updates)." '652 Patent at 5:39-45. Defendants also cite to a sentence in the summary that says that instructions "can be tailored as necessary or desirable by a content provider." (Dkt. No. 301 at 42); '652 Patent at 3:3-8. But the summary's use of the word "can" is instructive. Id. As with content data scheduling instructions, the specification nowhere says that the instructions "must" be tailored. Plaintiff's construction is therefore more reasonable.

**13. "content display system scheduling instructions for scheduling the display of the image or images on the display device"**

| PLAINTIFF'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| "instructions" that implement a display schedule by determining which image or images generated from the "sets of content data" will be displayed and mediating conflicts between the display requirements of multiple "sets of content data" | "instructions" that implement a display schedule for a particular content display system by determining the display order and display duration for image(s) generated from each available set of content data |

1

2          The Court adopts Plaintiff's construction: "'instructions' that implement a display

3  schedule by determining which image or images generated from the 'sets of content data' will be

4  displayed and mediating conflicts between the display requirements of multiple 'sets of content

5  data.'"

6          Only Plaintiff's construction encompasses all types of content display system scheduling

7  instructions discussed in the specification, without requiring any particular type. See '652 Patent

8  at 10:43-11:10; 20:37-42; 26:52-57. Defendants' construction highlights one type of content

9  display system scheduling instructions (display order and duration), but fails to mention that the

10  specification teaches that these instructions may also determine whether images generated from

11  certain sets of content data will be displayed at all. Id.; (Dkt. No. 300 at 36). For example, in

12  Column 26, lines 52-57, the specification teaches that "[t]he content display system scheduling

13  instructions can include instructions that evaluate a probability function each time that a set of

14  content data in the schedule is presented for display, and either display or not display the set of

15  content data dependent upon the evaluation of the probability function. '652 Patent at 26:52-57.

16          Defendants' proposed construction is incorrect because it excludes these types of content

17  display system scheduling instructions. See Adams Respiratory Therapeutics, Inc. v. Perrigo Co.,

18  616 F.3d 1283, 1290 (Fed. Cir. 2010) (A claim construction that excludes the preferred

19  embodiment is rarely, if ever, correct and would require highly persuasive evidentiary support.").

20  Rather that improperly injecting a limitation into the construction, as Defendants charge, the

21  statement that the instructions "mediat[e] conflicts between the display requirements of multiple

22  'sets of content data'" simply construes the term in accordance with the specification. (Dkt. No.

23  315 at 24); see '652 Patent at 10:43-11:10.

24

14. "instructions"

| PLAINTIFF'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| Either (a) data related to the accomplishment of a function and/or (b) a statement or expression that can be interpreted by a computer that specifies a function to be performed by a system | A statement in a programming language that specifies a function to be performed by a system |

The Court adopts Defendants' construction: "a statement in a programming language that specifies a function to be performed by a system."

Plaintiff's proposed construction asks the Court to adopt a broad reading that expands the scope of the term "instructions" beyond its plain and ordinary meaning to also "include data related to the accomplishment of a function." (Dkt. No. 300 at 37-38.) Plaintiff's construction would go even further that Plaintiff explains, classifying data alone as "instructions" if it is "related to the accomplishment of a function." (Id.) This is a step too far.

The intrinsic evidence does not support the conclusion that an "instruction" is "data." For example, the text of the specification explicitly recognizes that "instructions" and "data" are different things because functional components can be represented by one or the other. See '652 Patent at 14:53-54 ("Each of the functional components are represented by a set of instructions and/or data." (emphasis added)). If "data" is a type of "instructions," then the phrase "instructions and/or data" would not make sense. Id.; (Dkt. No. 301 at 44). The specification acknowledges that "sets of instructions may include, if appropriate, data related to accomplishment of the functions associated with the set of instructions." '652 Patent at 14:55-57. In other words, instructions might include data, but instructions cannot be data alone. (Dkt. No. 301 at 44.) This conclusion is confirmed by Plaintiff's citations to the specification, see '652

1  Patent at Fig. 3A, 14:49-65, which state that instructions "may include" data, but do not say that

2  "data" is "instructions." (Dkt. No. 300 at 38.)

3      Contrary to Plaintiff's assertion, the prosecution history of the '314 Patent also does not

4  support its proposed construction. Plaintiff cites a portion of the prosecution history of the '314

5  Patent where the examiner explained that the Farber Patent teaches "the respective content

6  provider may provide scheduling instructions tailored to the set of content data since the

7  providing [sic] may send information (new information is an instruction to display new

8  information) at the provider's control to the client, thus controlling the duration, sequencing, and

9  timing of the images displayed . . . ." '314 Patent History, 2/14/2003 Office Action at 6

10 (IL_DEFTS0006109). But this statement, made in a parenthetical and discussing a different

11 patent, nowhere says that information alone can constitute an "instruction." Id.

12     **15. "means for displaying one or more control options with the display device while the**
       **means for selectively displaying is operating"**

13

| PLAINTIFF'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| **Function:** displaying one or more control options with the display device while the means for selectively displaying is operating | **Function:** displaying one or more control options with the display device while the means for selectively displaying is operating |
| **Structure:** One or more digital computers programmed to provide a dialog box that includes a list of one or more of the following control options (1) terminate the operation of the attention manager, (2) begin display of the next scheduled set of content data, (3) begin display of the previous scheduled set of content data, (4) remove a set of content data from the display schedule, (5) prevent a set of content data from being displayed until it has been updated, (6) modify the display schedule in response to a user's identified satisfaction with a set of content data, (7) establish a link with an information source, (8) provide an overview of all the content data available for display by | **Structure:** One of more digital computers programmed to provide a dialog box that includes a list of one or more of the following control options; perform at least one of steps 501 (Want to display the next set of content data in the schedule?), 502 (Want to display the previous set of content data in the schedule?), 503 (Want to remove the current set of content data from the schedule?), 504 (Want to prevent display of the current set of content data until that set of content data has been updated?), and 505 (Want to specify a satisfaction level for the current set of content data?), and structural equivalents. |

CLAIM CONSTRUCTION ORDER- 28

| the attention manager, (9) maintain display of the current set of content data, or (10) remove the control option interface and structural equivalents. | |
|---|---|

The Court adopts Plaintiff's construction of this means-plus-function term.

The parties agree that this claim limitation is written in means-plus-function format and therefore invokes 35 U.S.C. § 112 ¶ 6, requiring a determination of the limitation's function and then identifying the corresponding structure in the patent's written description that performs that function. (Dkt. No. 300 at 40-41; Dkt. No. 301 at 45.) The parties also agree that the function of this limitation is "displaying one or more control options with the display device while the means for selectively displaying is operating." (Id.) The parties even agree that the structure that performs this function is "one or more digital computers programmed to provide a dialog box that includes a list of . . . control options." (Id.) The only disagreement is over what should be included in the list of control options. (Id.)

Of the two, Plaintiff's proposed list finds more support in the specification. Defendants derive their list of control options solely from steps 501-505 of Figure 5B. '652 Patent at Fig. 5B. But the Federal Circuit has held that when a specification discloses multiple structures that may correspond to the function of a means-plus-function limitation, the limitation is properly construed as covering all such structures and their equivalents. See Micro Chem., 194F.3d at 1258-59. "The specification can express the algorithm in any understandable terms including as a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure." Noah Sys., Inc. v. Intuit, Inc., 675 F.3d 1302 (Fed. Cir. 2012) (citations omitted).

1    Plaintiff points to five other control options (options 1 and 7-10), all of which are

2    expressly disclosed in the specification. For example, the specification expressly identifies

3    option 1 (terminate the operation of the attention manager), stating, "One control option that can

4    be used with an attention manager according to the invention enables the user to directly

5    terminate operation of the attention manager." '652 Patent at 25:37-40. It expressly describes

6    option 7 (establishing a link with an information source), stating, "Still another control option

7    that can be used with an attention manager according to the invention enables the user to

8    establish a link with another information source." '652 Patent at 27:16-18. It expressly describes

9    option 8 (providing an overview of all content data available for display by the attention

10   manager), stating, "Another control option that can be used with an attention manager according

11   to the invention enables the user to obtain an overview of all of the content data available for

12   display by the attention manager." '652 Patent at 27:64-67. It expressly describes option 9

13   (maintaining display of the current set of content data), stating, "Still another control option that

14   can be used with an attention manager according to the invention enables the user to maintain

15   display of the currently displayed set of content data 350 until such display is terminated by the

16   user." '652 Patent at 28:10-13. It expressly describes option 10 (removing the control option

17   interface), stating, "Selection of the 'cancel' option 602e causes the dialog box 601 to be

18   removed from the screen 600." '652 Patent at 28:21-28. Each of these descriptions explicitly

19   describes control options in an unambiguous manner.

20   Defendants argue that these statements in the specification are "generic statement[s]" that

21   "do[] not expand the corresponding structure." (Dkt. No. 301 at 46); see Atmel Corp. v. Info.

22   Storage Devices, Inc., 997 F. Supp. 1210, 1215 (N.D. Cal. 1998) ("A specification that merely

23   mentions the possibility of alternative structures without specifically identifying them is not

24

1  sufficient to expand the scope of the claim beyond the example used."). But the specification

2  here does not "merely mention[]" the structures; it explicitly identifies them. (See Dkt. No. 300

3  at 43.) The Federal Circuit has no requirement that all control options be described together in

4  one flowchart. Therefore, Plaintiff's proposed construction is more reasonable.

5                                     **Conclusion**

6       The Court finds that the terms "unobtrusive manner" and "does not distract a user" are

7  indefinite, and that the claims containing these terms are therefore invalid under 35 U.S.C. § 112

8  ¶ 2. The Court adopts Plaintiff's proposed construction of terms 1, 2, 6, 7, 9, 10, 11, 12, 13, and

9  15. The Court adopts Defendants' proposed construction of terms 3, 5, 8, and 14.

10       The clerk is ordered to provide copies of this order to all counsel.

11       Dated this 19th day of December, 2012.

12

13

14

_____
Marsha J. Pechman
15                                   United States District Judge

16

17

18

19

20

21

22

23

24