1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10   INTERVAL LICENSING LLC,                    CASE NO. C10-1385-MJP

11                          Plaintiff,          ORDER GRANTING
                                                DEFENDANTS' MOTION FOR
12          v.                                  JUDGMENT ON THE PLEADINGS

13   AOL INC, et al.,

14                          Defendants.

15

16          THIS MATTER comes before the Court on Defendants' Motion for Judgment on the

17   Pleadings.  (Dkt. No. 372.)  Having considered the Parties' briefing and all related papers, the

18   Court GRANTS the motion.

19                                      **Background**

20          Plaintiff Interval Licensing, LLC brings suit against various defendants for patent

21   infringement.  (Dkt. No. 153.)  Defendants AOL, Inc., Apple, Inc., Google, Inc., and Yahoo!

22   Inc., now move for judgment on the pleadings, arguing that the asserted claims of U.S. Patent

23   No. 6,034,652 ("the '652 patent") are invalid under 35 U.S.C. § 101 and <u>Alice Corp. v. CLS</u>

24

1   Bank Int'l, 134 S. Ct. 2347 (2014) because the claims are directed to an abstract idea and contain

2   no inventive concept to render them patent eligible.  (Dkt. No. 372.)

3          Plaintiff opposes the motion, arguing that the asserted claims of the '652 patent are valid

4   because they are not abstract and include an inventive concept that enhances existing technology.

5   (Dkt. No. 378.)

6                                              **Discussion**

7   I.      Legal Standards

8          A.      Judgment on the Pleadings

9          After the pleadings are closed, a party may move for judgment on the pleadings.  Fed. R.

10  Civ. P. 12(c).  A judgment on the pleadings is properly granted when, taking all the allegations in

11  the pleadings as true, the moving party is entitled to judgment as a matter of law.  Milne ex rel.

12  Coyne v. Stephen Slesinger, Inc., 430 F.3d 1036, 1042 (9th Cir. 2005).

13         B.      Patent Invalidity under 35 U.S.C. § 101

14         Laws of nature, natural phenomena, and abstract ideas are not patentable.  Alice Corp. v.

15  CLS Bank Int'l, 134 S. Ct. 2347, 2354 (2014).  Otherwise, monopolization of those tools through

16  the grant of a patent might tend to impede innovation more than it would tend to promote it,

17  thereby thwarting the primary objective of the patent laws.  Id. (citing Mayo Collaborative Servs.

18  v. Prometheus Labs., Inc., 132 S. Ct. 1289 (2012).)  At the same time, courts must tread carefully

19  in construing this exclusionary principle "lest it swallow all of patent law."  Id.

20         Accordingly, in applying the § 101 exclusionary principle, courts must distinguish

21  between patents that claim the "building blocks" of human ingenuity and those that integrate the

22  building blocks into something more, thereby transforming them into a patent-eligible invention.

23  Id.  To distinguish patents that claim laws of nature, natural phenomena, and abstract ideas from

24  those that claim patent-eligible application of those concepts, courts first "determine whether the

1    claims at issue are directed to one of those patent ineligible concepts." Id.  If so, courts then ask

2    "what else is there in the claims before [them]." Id.  To answer the second question, courts

3    "consider the elements of each claim both individually and 'as an ordered combination' to

4    determine whether the additional elements 'transform the nature of the claim' into a patent-

5    eligible application." Id.  The Supreme Court characterizes the second step as a "search for an

6    inventive concept," i.e. an element or combination of elements that is sufficient to ensure that the

7    patent in practice amounts to significantly more than a patent upon the ineligible concept itself.

8    Id.

9          II.      Step One: Patent-Ineligible Concept

10          The Court must first determine whether the claims at issue are directed to a patent-

11    ineligible concept.  The Parties agree that the asserted claims are directed to the operation of an

12    "attention manager" system, but disagree about whether the attention manager system is a patent-

13    ineligible abstract idea.  (Dkt. Nos. 372 at 10-11, 378 at 13.)

14          Defendants argue the asserted claims are directed at the abstract idea of providing

15    information to a person without interfering with the person's primary activity.  (Dkt. No. 372 at

16    10-17.)  In support of this contention, Defendants point to the Federal Circuit's construction of

17    "attention manager" as "a system that displays images to a user either when the user is not

18    engaged in a primary interaction or in an area of the display screen that is not used by the user's

19    primary activity." (Id. (quoting Interval Licensing LLC v. AOL, Inc., 766 F.3d 1364, 1376 (Fed.

20    Cir. 2014)).)  Defendants argue that the "attention manager" as construed recites the idea of

21    providing information to a user at a certain time or location without restricting how that result is

22    to be accomplished, therefore doing nothing more than reciting the abstract idea of providing

23    information to a person without interfering with the person's primary activity. (Dkt. No. 372 at

24

ORDER GRANTING DEFENDANTS' MOTION
FOR JUDGMENT ON THE PLEADINGS- 3

10-17.)  Defendants argue that the claims recite instructions for acquiring and requesting

information, for scheduling the display of information, and for displaying the information, and

that these are basic and long-practiced acts used by humans to communication information.  (Id.)

Interval argues that the claims are "directed to the operation of an attention manager

system," which, as construed by the Federal Circuit, is a not an abstract idea but rather a "multi-

tiered, networked architecture of computers that communicates in a predefined manner to

facilitate the automatic provision of information from multiple content providers to an interested

user in a[] non-invasive manner."  (Dkt. No. 378 at 13-22.)  Interval argues that multiple claim

elements are non-abstract, that Defendants' analogies are inapplicable, and that the tasks

performed by the system are "not the sort of mental process that the Supreme Court has found to

be an exception to the general rule of patent eligibility."  (Id. at 13-14 (citing Gottschhalk v.

Benson, 409 U.S. 63 (1972).)

The Court finds that the asserted claims are directed to the abstract idea of providing

information to a person without interfering with the person's primary activity.  This basic and

longstanding practice can be found in, for example, a television station's use of a breaking news

ticker across the bottom of the screen.  The text-only news ticker provides information to viewers

without interfering with the primary activity: the main story then being reported by the on-screen

news anchor.  Similarly, a lawyer's legal assistant may provide her with messages or mail in a

manner that does not interfere with her primary activity: participating in a conference call.  This

could be accomplished at a certain time (delivering the message between telephone calls) or in a

certain location (placing the message in the corner of her desk).

Interval's arguments that multiple individual claim elements are non-abstract are

unavailing.  See Internet Patents Corp. v. Active Network, Inc., 790 F.3d 1343, 1346 (Fed. Cir.

1    2015) ("Under step one of <u>Mayo</u>/<u>Alice</u>, the claims are considered in their entirety to ascertain

2    whether their character as a whole is directed to excluded subject matter.").  Interval's assertion

3    that patent-ineligible abstract ideas can be found "only where the claims involve mathematical

4    algorithms or business methods involving fundamental economic practices" is also incorrect.  As

5    the Supreme Court explained in <u>Alice</u>, the operative question is whether or not the patent claims

6    are directed toward an abstract idea, and <u>not</u> whether or not the invention could be classified into

7    one of Plaintiff's categories.   <u>Alice</u>, 134 S. Ct. at 2356-57; <u>see also</u> <u>Internet Patents Corp.</u>, 790

8    F.3d at 1348-49.  Finally, the Court rejects Interval's attempts to remove the claims from the

9    realm of the abstract by including unclaimed elements or importing requirements it previously

10   argued against.  (<u>See</u> Dkt. Nos. 300, 341.)

11         The Court finds that elements of all of the claims at issue (claims 15-18 of the '652

12   patent) are directed towards the same abstract idea—providing information to a person without

13   interfering with the person's primary activity, as discussed above—whether analyzed

14   individually or as an ordered combination.  Claims 15 and 18 are representative.

15         III.    Step Two: Inventive Concept

16         Having determined that the claims are directed to an abstract idea, the Court must now

17   examine the elements of the claims to determine whether they contain an "inventive concept"

18   sufficient to transform the claimed abstract idea into a patent-eligible concept.  Defendants argue

19   that the claims contain no inventive concept beyond providing information to a person without

20   interfering with the person's primary activity using computers and computerized displays.  (Dkt.

21   No. 372 at 17-26.)  Interval argues the claims contain an inventive concept that solves prior art

22   problems by "improv[ing] the provision of content data in a networked environment where users

23   are individually associated with display devices."  (Dkt. No. 378 at 22-25.)

24

1    A claim that recites an abstract idea must include "additional features" to ensure that the

2    claim is more than a drafting effort designed to monopolize the abstract idea.  Alice, 134 S.Ct. at

3    2357.  Mere recitation of a generic computer cannot transform a patent-ineligible abstract idea

4    into a patent-eligible invention, meaning that if a patent's recitation of a computer amounts to a

5    mere instruction to implement an abstract idea on a computer, the claims fail to be patent

6    eligible.  Id. at 2358.  Given the ubiquity of computers, wholly generic computer implementation

7    is not generally the sort of "additional feature" that provides any practical assurance that the

8    process is more than a drafting effort designed to monopolize the abstract idea itself.  Id.

9        The fact that a computer necessarily exists in the physical, rather than purely conceptual,

10   realm, is beside the point.  Id. at 2358.  Otherwise, computer implementation would allow

11   applicants to claim any principle of the physical or social sciences by reciting a computer system

12   configured to implement the relevant concept.  Id. at 2359.

13       In Alice, the Supreme Court framed the relevant question at step two as "whether the

14   claims here do more than simply instruct the practitioner to implement the abstract idea of

15   intermediated settlement on a generic computer."  Alice, 134 S. Ct. at 2359.  The Supreme Court

16   held that the Alice patents did not do more because "[t]aking the claim elements separately, the

17   function performed by the computer at each step of the process is purely conventional."  Id.

18   (internal quotation marks omitted).  The Supreme Court found that using a computer for

19   electronic recordkeeping was "one of the most basic functions of a computer" and that use of a

20   computer to obtain data, adjust account balances, and issue automated instructions are uses that

21   are "well-understood, routine, conventional activities previously known to the industry."  Id.

22   The Supreme Court then considered the claims as an ordered combination and found that the

23   claims "simply recite the concept of intermediated settlement as performed by a generic

24

ORDER GRANTING DEFENDANTS' MOTION
FOR JUDGMENT ON THE PLEADINGS- 6

computer."  <u>Id.</u>  In making that finding, the Court noted that the claims did not purport to improve the functioning of the computer itself, and did not "effect an improvement in any other technology or technical field."  <u>Id.</u>  The Court rejected the petitioner's arguments that its system claims recited "specific hardware" configured to perform "specific computerized functions" because the claims described only "purely functional and generic" hardware—in other words, because nearly every computer will include a "communications controller" and a "data storage unit" capable of performing basic calculation, storage, and transmission functions, "none of the hardware recited by the systems claims offers a meaningful limitation beyond generally linking the use of the method to a particular technological environment, that is, implementation via computers."  <u>Id.</u>

The Federal Circuit has also shed light on the requirement at step two that the claims contain an additional inventive concept that transforms an abstract idea into a patent-eligible invention.  In <u>buySAFE, Inc. v. Google, Inc.</u>, 765 F.3d 1350 (Fed. Cir. 2014), the Federal Circuit found that the claims' invocation of computers added no inventive concept because the computer functionality was generic—the computer received a request for a guarantee and transmitted an offer of guarantee in return—and because the transmission of information over a network was "not even arguably inventive."  765 F.3d at 1355.  The Federal Circuit found that the claims' narrowing to cover only online transactions was "an attempt to limit the use of the abstract guarantee idea to a particular technological environment, which has long been held insufficient to save a claim in this context."  <u>Id.</u> (internal quotation marks omitted).

The Court finds that the elements of the asserted claims are purely conventional and do no more than apply the abstract idea of providing information to a person without interfering with the person's primary activity in the particular technological environment of networked

1   computers.  The claims are implemented using only well-known, pre-existing and conventional

2   computer equipment.  (See, e.g., '652 patent at 1:39-55, 3:19-31.)  While Interval identifies

3   previously-existing "problems" addressed by the attention manager in the technological

4   environment of networked computers using "windowed, multitasking operating systems,"

5   Interval never clearly articulates what exactly the inventive concept is that is contained in the

6   asserted claims.  (See Dkt. No. 378 at 23-25.)  Additionally, the claims as construed are not

7   limited to using unused space on a screen with windows because the screensaver embodiment is

8   not related to unused spatial capacity.  And the claims do not recite how the attention manager

9   performs the function of determining where to display images in the "windowed" environment

10  so that they do not interfere with a user's primary activity.  See Internet Patents Corp., 790 F.3d

11  at 1348.  Details from the specification that are not found in the claims cannot provide a missing

12  inventive concept.  See Dealertrack, Inc. v. Huber, 674 F.3d 1315, 1334 (Fed. Cir. 2012).

13        As the Supreme Court explained in Alice, Parker v. Flook, 437 U.S. 584 (1978), stands

14  for the proposition that the prohibition on patenting abstract ideas cannot be circumvented by

15  attempting to limit the use of the idea to a particular technological environment.  Alice, 134 S.

16  Ct. at 2358; see also buySAFE, 765 F.3d at 1355 (claims' narrowing to cover only online

17  transactions was "an attempt to limit the use of the abstract guarantee idea to a particular

18  technological environment, which has long been held insufficient to save a claim in this

19  context").  Analyzing the claim elements here individually or as an ordered combination yields

20  the same result: the patents do not contain an inventive concept sufficient to transform the

21  abstract idea into a patent-eligible application.  Instead, the claims offer nothing more than a

22  generic, high-level description of an abstract idea that can be implemented with nothing more

23

24

ORDER GRANTING DEFENDANTS' MOTION
FOR JUDGMENT ON THE PLEADINGS- 8

1  than generic, pre-existing computer functionality.  Accordingly, the asserted claims of the '652

2  patent are invalid.

3  **Conclusion**

4      The Court finds that the asserted claims of the '652 patent are invalid under 35 U.S.C.

5  § 101 and <u>Alice Corp. v. CLS Bank Int'l</u>, 134 S. Ct. 2347 (2014), because the claims are directed

6  to an abstract idea and contain no inventive concept to render them patent eligible.  Accordingly,

7  Defendants' Motion for Judgment on the Pleadings is GRANTED.  The Parties are ORDERED

8  to submit an updated joint status report advising the Court in writing as to how this case will

9  proceed in light of this ruling no later than twenty-one (21) days from the date of this order.

10

11      The clerk is ordered to provide copies of this order to all counsel.

12

13      Dated this 16th day of June, 2016.

14

15

16      _____
        Marsha J. Pechman
17      United States District Judge

18

19

20

21

22

23

24

ORDER GRANTING DEFENDANTS' MOTION
FOR JUDGMENT ON THE PLEADINGS- 9